## IVES v. GRANGE et al.

No. 2430.    Decided May 8, 1913.    (134 Pac. 619).

1. TRUSTS—ESTABLISHMENT—EVIDENCE—SUFFICIENCY. In an action to quiet title, where plaintiff traced his title through a purchase on foreclosure, evidence *held* insufficient to show that he held the instrument foreclosed and purchased the property at foreclosure sale as the agent of defendants' grantor. (Page 612.)

2. QUIETING TITLE—EVIDENCE TO ESTABLISH—SUFFICIENCY. In an action to quiet title, where it appeared that the record title was

in plaintiff, evidence of an offer by plaintiff to purchase the interest of defendants' grantor, particularly when denied by plaintiff, is insufficient to divest his record title. (Page 612.)

3. QUIETING TITLE—FINDINGS—EFFECT. In an action to quiet title tried to the court, a finding that all claims, of the plaintiff were barred by the provisions of certain statutes and the right of defendants was perfected by limitations is a nullity, where no facts were found on which to base it. (Page 615.)

4. ADVERSE POSSESSION—ADVERSE TITLE—PAYMENT OF TAXES. Payment of taxes, though for more than seven years, coupled with open and notorious possession for only two or three years, will not give title by adverse possession. (Page 615.)

5. LIMITATION OF ACTIONS—TIME OF ACCRUAL OF ACTION. Where plaintiff purchased vacant and unimproved property at foreclosure sale, receiving a deed therefor, the law presumes that he was in constructive possession and entitled to actual possession in the absence of evidence to the contrary; therefore defendants' possession of the land for two or three years prior to the commencement of an action will not bar plaintiff's right under Comp. Laws 1907, sec. 2859, providing that no action for the recovery of real property can be maintained unless it appear that plaintiff was seized within seven years before commencement of the action.[1] (Page 615.)

6. VENDOR AND PURCHASER—RELIANCE THEREON. That an abstract of title erroneously showed defendants' grantor to be the record owner and defendants relied thereon is no defense to an action by the true owner. (Page 616.)

7. QUIETING TITLE—IMPROVEMENTS AND TAXES. Where the record owner of land permitted others to pay the taxes thereon and to enter into possession and make valuable improvements in good faith, he cannot, having delayed his action for several years after such improvements, take them without compensation, but must compensate the possessors for such improvements and also reimburse those who paid the taxes. (Page 616.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Norman H. Ives against Ralph Grange, and others.

[1] Gibson v. McGurrin, 37 Utah, 158, 106 Pac. 669.

42 Utah 38

Judgment for defendants. Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*R. S. Farnsworth* for appellant.

*J. D. Skeen* and *Valentine Gideon* for respondents.

STRAUP, J.

This is an action to quiet title to certain lots in Ogden City. Plaintiff alleged that he was the owner and entitled to the possession of them, and that the defendants asserted an unfounded claim to them. The defendants denied the plaintiff's ownership and right of possession and alleged that the Granges were the owners and entitled to the possession, and that Kruse held a mortgage given by the Granges to her.

Plaintiff's claim of ownership is this:

In 1890 one Warren G. Child, who then was the owner of the property, sold and conveyed it by warranty deed to one Leo Busse. Busse as a part of the consideration gave a promissory note for $887 to Child and a mortgage back to secure it. Child assigned and transferred the note to the plaintiff. In 1902 the plaintiff brought an action to foreclose the mortgage and obtained a judgment of foreclosure, upon which an order of sale was made, the property sold in that year and purchased by plaintiff at the sale. It was not redeemed, and so a sheriff's deed was made and delivered to the plaintiff in 1905. The regularity of these proceedings are not questioned.

The defendants alleged that the assignment and transfer by Child to plaintiff was without consideration and was made and the foreclosure had in the name of the plaintiff and the deed delivered to him by the sheriff in trust for Child and for his use and benefit. They further alleged that a few days before the sheriff's deed was made and delivered "the plaintiff agreed with Child that he would execute and deliver to said Child a deed to all of said property covered

by said mortgage foreclosure, and in pursuance of said agreement he pretended to execute such a deed, and did in fact excute a deed," but only to a portion of the property; that at that time Child's eyesight and mental faculties were impaired; that the plaintiff delivered the deed to Child's son, who was his agent and who represented him and who "was not familiar with the prior transactions between the said plaintiff and Warren G. Child, and relied upon the representation of the said plaintiff that said deed conveyed all of the property covered by the sheriff's deed, and neglected to read or compare the description of said property and accepted said deed and caused it to be recorded." It is further alleged that about a year thereafter W. G. Child died, and that his executors thereafter sold the property in question (the portion thereof not conveyed by the plaintiff to Child) to the Granges, who mortgaged to Kruse. It is further alleged that the Granges and their predecessors in interest, Warren G. Child, his heirs and legal representatives, for more than seven years prior to the commencement of the action, held, claimed, and possessed the property adversely and under claim of right as owners, and paid all the taxes, and that the action was barred. The case was tried to the court.

The court found:

(1) That the note was indorsed and assigned to plaintiff by Child without consideration; (2) that the plaintiff foreclosed "the mortgage in his own name but as the trustee of the said Warren G. Child, and that the plaintiff at no time had any interest in or claim to said note other than as trustee of the said Child," and "was at no time in possession of the said real property, and never at any time paid the taxes;" (3) that Warren G. Child "from and after the year 1895 and until his death paid all the taxes and claimed to be the owner of the property," and that after his death the taxes were paid by the Granges; (4) that in 1892 the property was sold by Ogden City for a want of payment of a special tax assessment against the property, and in 1893 "a deed was executed to Ogden City," and in 1895 the city, by quitclaim deed, conveyed to Warren G. Child, and

that in 1907 the executors of Warren G. Child conveyed to the Granges; (5) that in 1905, and prior to the execution and the delivery of the sheriff's deed to plaintiff, he (the plaintiff) at the request of Warren G. Child,, and without consideration, conveyed by quitclaim deed a portion of the premises to Child, being the portion thereof which Child had prior thereto by contract agreed to convey to one A. W. Rankin; (6) that the plaintiff in a conversation with one of the sons of Warren G. Child "offered to buy the premises" and "stated that he would pay $500 for the same providing he was allowed a credit of $100 which he claimed was owing him by Warren G. Child," and "agreed to make and execute a deed conveying said premises to the said Warren G. Child," and that the plaintiff made a quitclaim deed to Child to that portion which Child had agreed to convey to Rankin, but the son accepted the deed "believing and with the understanding that the said deed conveyed the title to all of the property which the plaintiff had received under the mortgage foreclosure," and placed it on record; (7) that the executors of the estate of Warren G. Child, believing that he at the time of his death was the owner of the property in question (the part not sold and conveyed to Rankin), sold and conveyed it to the Granges; and (8) "that any and all claims of the plaintiff is barred by the provisions of Comp. Laws 1907, sections 2859 to 2866, inclusive, and that the right and claim of the defendant Ralph Grange to said property is perfected by reason of the provisions of said statute of limitations."

Upon these findings the court stated conclusions: (1) That the plaintiff's action should be dismissed; and (2) that the defendant, Ralph Grange, is entitled to a judgment quieting the title of the premises in him. The plaintiff appeals. He assails the findings.

We think they are not supported by the evidence. In the main they are but a copy of the defendants' answer. Though the allegations thereof were denied, yet the court in such particular, regardless of evidence, found what the defendants alleged. The plaintiff's title is predicated    **1, 2** on the foreclosure of the mortgage and the sheriff's

deed thereunder. The pleadings, findings, and judgment of that proceeding, the order and sale, and the sheriff's deed were put in evidence. The regularity of the proceedings are unquestioned. On their face they clearly show title in the plaintiff. That is conceded. But the defendants alleged, and the court found, that the note assigned to plaintiff by Warren G. Child was without consideration and in trust for Child. When asked what evidence there was to support such allegations and findings, the reply was: "There is no evidence as to the consideration, if any, for the indorsement (of the note), and death having sealed the lips of the indorser there was no means of securing testimony of the fact. The court is thereby left to draw the conclusion as to this transaction from other competent evidence."

Such other "competent evidence" to which our attention is directed is this:

The indorser, Child, was not made a party to the foreclosure proceedings; the plaintiff at the sale purchased the property for a sum less than the face of the note and interest and took no deficiency judgment against the defendants in the foreclosure proceedings, who, as the respondents say, "were summoned by publication;" the plaintiff was entitled to a sheriff's deed in 1903, but took none until in 1905; Child had entered into a contract with Rankin for a sale of a portion of the property more than a year before the deed from the plaintiff to Child had been executed quitclaiming that portion of the property to Child, and that "the plaintiff witnessed the execution of the instrument," the contract from Child to Rankin; the property was sold to Ogden City in 1893 for want of payment of special taxes and was thereafter reconveyed to Child, who from 1895 to the time of his death paid the general taxes; the testimony of one of the deceased's sons that the plaintiff stated to him that he "held a deed of trust covering these lots" and "I would like to buy them of you and said that he would give $500 for the lots providing we would allow him a bill of $100 that he claimed against my father for notary work, drawing contracts, deeds, and one thing or another," which conversations and admis-

sions were denied by the plaintiff; and that the son "had supposed" that the deed made by plaintiff to Warren G. Child more than a year before his death, covering the portion of the property Child had agreed to convey to Rankin, in fact covered the whole of the property described in the mortgage and in the sheriff's deed. "These circumstances," say the respondents, "unerringly point to the fact that the note was indorsed and the foreclosure proceedings conducted by Ives as the agent for Child for the mere convenience of the parties, and we think all these transactions utterly unexplainable upon any other theory, and that they are themselves sufficient to sustain the findings and the decree." Except as to the payment of the taxes, we see nothing in them. They do not support the findings that the note was assigned and transferred to the plaintiff without consideration, or that such assignment was made and the mortgage foreclosed in plaintiff's name, in trust for Child, and for his use and benefit. Of what probative value in such particular is the fact that the plaintiff did not make Child a party to the foreclosure proceedings? That the property was sold for special taxes? That the plaintiff waited two years before he received the sheriff's deed? That the plaintiff made a quitclaim deed to Child for the portion of the property Child had agreed to sell to Rankin, without a showing of the circumstances under which it was made? Counsel assert, and the court found, that the deed was without consideration. But there is no evidence of that. Of what value is the other circumstance, the testimony of Child's son, that the plaintiff stated to him that he (the plaintiff) "held a deed of trust covering those lots" and expressed a desire to buy them for $500 providing he was allowed $100 for services rendered the deceased? A clear record title of one cannot be taken from him and given to another upon such loose language as that, especially when it is flatly denied and contradicted, one witness against another, both interested. Nor is there any evidence to support the allegations that the plaintiff had agreed to convey the whole of the property to Child.

But, assert the respondents, they had title by adverse possession. All that the court found with respect to that is finding No. 8 heretofore referred to. Such a finding amounts to nothing. It is but a conclusion that the defendants had acquired title by adverse possession. No facts are found upon which to base it, and no testimony is given to show an adverse holding other than the payment of taxes and that the Granges, after their purchase from the executors, between two and three years before this action was commenced, took possession of the property and improved it. But that is not sufficient.

Payment of taxes, though for more than seven years, but "open and notorious" possession for only two or three years, does not give title by adverse possession.

Now, as to the statute of limitations: Our Code (Comp. Laws 1907, section 2859) provides that "no action for the recovery of real property, or for the possession thereof, shall be maintained, unless it appear that the plaintiff, his ancestor, grantor, or predecessor was seized or possessed of the property in question within seven years before the commencement of the action." The property was sold on mortgage foreclosure in 1902 and a sheriff's deed given to the plaintiff in 1905. The property, then, was, and prior thereto had been, vacant and wholly unimproved and unfenced. It remained so until after the conveyance by the executors to the Granges in 1907. In that year, or in 1908, they entered into the actual possession of the same and made improvements thereon. This suit was commenced in 1910. The plaintiff having shown the legal title was in him, the law presumed that he was in the constructive possession and entitled to the actual possession, in the absence of evidence to the contrary. *Gibson v. McGurrin,* 37 Utah, 158, 160 Pac. 669. No evidence is shown to the contrary, except that showing the possession of the Granges two or three years before the commencement of the action. So that, within two or three years before the commencement of the action, the plaintiff

was "possessed and seised" of the property. We therefore think the action not barred.

We do not see anything in the defendants' contention, except the payment of taxes. It is alleged and it is shown that the taxes were paid by Child from 1895 to the time of his death, and thereafter by the Granges. But that alone is not sufficient to show adverse possession or that the action is barred. Neither does it show that the note and mortgage were transferred to the plaintiff without consideration and in trust for the use and benefit of Child. No claim is made that the deed from Ogden City to Child conferred or vested title in him as against his assignee, the plaintiff. All that is claimed for that is "the quitclaim deed by Ogden City to Warren G. Child gave him such a title as would vest in him or his successors the right to plead the statute (of adverse possession and limitation) against any former lienholders or others claiming an interest in the property," and that "whatever rights the defendants or their predecessors had, either as lienholders or as purchasers under that sale, accrued at the date of the sale, and their right to invoke the statute of limitations begins to run from that date."

The remaining question is, What judgment should be entered? The Granges, in the purchase of the property from the executors, relied on an abstract of title furnished them which erroneously showed that the quitclaim deed from plaintiff to Child was a deed for the whole of the property covered by the mortgage and the sheriff's 6 deed, when in fact such deed, and as recorded, was one for a conveyance only of that portion of the property conveyed by Child to Rankin. If course such error of the abstracter cannot affect plaintiff's title.

But the Granges, relying on such abstract of title, believed the executors had good right to convey, and in good faith purchased, the property and entered into possession of it and made permanent and valuable improvements thereon—built a dwelling on it and made other improvements. While no estoppel is invoked against the plaintiff, nor does the evidence show any, yet enough appears to show that 7

he was guilty of such negligence as not to entitle him to reclaim the property with the improvements and without recompense for the payment of the taxes. An issue was tendered with respect to this. The evidence shows that the taxes were not paid by plaintiff, though he was a resident of Ogden from 1890 to 1907. Now, it may be said that during the time he held the note and mortgage, and before foreclosure and sale of the property, the payment of taxes and assessments were obligations of the mortgagors, and hence the plaintiff may have believed or presumed that they had paid them. But he offered no such or any explanation, nor did he show that he was without knowledge that Child or the Granges had paid them or that the property had been sold for special taxes and redeemed by Child. So, though such delinquencies before the foreclosure and sale should not be held against him, still the evidence shows that he thereafter, from 1902 or 1903 to the commencement of the action in 1910, had not paid the taxes and likewise made no explanation of that. The taxes were charges against and liens upon the property superior to that of plaintiff's and of course he must have known that some one had paid them. And, in the absence of any explanation on his part, we think it a fair inference that he knew Child and the defendants claimed some interest in the property and for that reason had paid the taxes. While that alone is not sufficient to divest the plaintiff of title, yet we are not disposed, under the circumstances, to give him the benefit of all payment of taxes and to award the property to him with the improvements thereon. He invokes equity and he must do equity. We cannot regard him as wholly blameless. The case rather is one where both parties are to some extent at fault, but where both have equities. The plaintiff ought to have the reasonable market value of the land at the time of the commencement of the action, exclusive of the improvements placed thereon by the defendants. But as against that he ought to pay all the taxes, both general and special, legally assessed and levied against the land and which were paid by Child and the de-

fendants from and after 1895, together with legal interest thereon. The record does not disclose the amount thereof.

We are therefore of the opinion that the judgment of the court below should be reversed or modified and the case remanded, with the directions: To ascertain the market value of the property, exclusive of the improvements, at the time of the commencement of the action; ascertain the amount of the taxes, both special and general, assessed and levied against the land and paid by Child and the Granges since 1895, and to deduct such amount, together with interest thereon at 8 per cent. per annum, from such market value; to give the defendants the option to pay plaintiff, within 90 days after notice of such determination, such difference, and if such payments are so made then to enter a judgment quieting the title of the property in the Granges; if the defendants decline to exercise the option, then to ascertain the value of the improvements at the time of the commencement of the action and which were placed on the property by the defendants and give the plaintiff the option within ninety days after notice of such determination to pay the defendants the amount of such taxes, together with interest and the value of the improvements, less a reasonable rental value of the land during the defendants' occupancy, and, if in such case such payments are so made, then to enter a judgment quieting the title of the property in the plaintiff; and, if the plaintiff also shall decline such option, then to sell the property and apply the proceeds of sale first to the cost of such sale, then pay to the defendants the amount of such taxes and interest, and then divide the balance of such proceeds between the plaintiff and the defendants in proportion of the market value of the land, exclusive of improvements, at the time of the commencement of the action, and the value of the improvements, less a reasonable rental value of the land during the defendants' occupancy. Each party is required to pay his own costs on appeal and in the court below. Such is the order.

McCARTY, C. J., and FRICK, J., concur.