## SHEPPICK v. SHEPPICK et al.

No. 2528.   Decided January 31, 1914.   On application for Rehearing February 27, 1914 (138 Pac. 1169).

1. LIFE ESTATES—INCIDENTS—TAXES.  A life tenant should be assessed for taxes as owner during the continuance of the life estate.  (Page 136.)

2. ADVERSE POSSESSION—PRESUMPTION—STATUTES.  Under the express provisions of Comp. Laws 1907, sec. 2861, it is presumed that one's possession of land to which another has the legal title is in subordination to such legal title.  (Page 136.)

3. ADVERSE POSSESSION—TRIAL—SUFFICIENCY OF EVIDENCE.  In an action to quiet title, where plaintiff established his legal title to land in the possession of defendant, his father, evidence *held* insufficient to show that defendant's possession was adverse.  (Page 136.)

4. APPEAL AND ERROR—HARMLESS ERROR—FINDINGS. Where no finding except one against defendant's claim of adverse possession was permissible under the evidence, error, if any, in failing to find on that issue was immaterial and harmless. (Page 137.)

5. APPEAL AND ERROR—BOND—FORMA PAUPERIS. Under Comp. Laws 1907, sec. 3305, which dispenses with an appeal bond in case appellant files an affidavit of impecuniosity before his appeal is taken, a party filing such affidavit is entitled to take and prosecute an appeal.[1] . (Page 137.)

6. QUIETING TITLE—RELIEF—EXTENT. In an action to quiet title, where it appeared that plaintiff held the legal title to land of which defendant was in possession, having made improvements thereon during a period of twenty years or more, so that the value had advanced from the $300 to $350 which plaintiff paid for it to $1500, plaintiff, in view of his title and defendant's use and occupation, was entitled to the entire right and interest. (Page 138.)

7. LIFE ESTATES—CLAIMS AGAINST THE REVERSION. A life tenant ordinarily may not claim compensation against the reversion for improvements or betterments made upon the estate during the continuance of the life tenancy. (Page 139.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action to quiet title by William Sheppick against William G. Sheppick, in which Thomas Sheppick and another, executors under his will, were substituted for defendant.

Judgment awarding a half interest to each party. Defendants appeal and plaintiff takes a cross appeal.

REVERSED AND REMANDED, WITH DIRECTIONS.

*Evans, Evans & Folland* for appellants and cross-respondents.

*C. E. Marks* and *J. H. Hurd* for respondent and crossappellant.

---

[1] Eddington v. Union Portland Cement Co., 42 Utah, 274, 130 Pac. 243.

FRICK. J.

This action was originally commenced by William Sheppick against his father, William G. Sheppick. After the action had proceeded to judgment the father died, and his two sons, Thomas and Herbert Sheppick, were substituted as executors of the father's will and estate. The mother had also died some time prior to the death of the father, and in what is said hereafter, we, for convenience, shall treat the father as still living, and whom we shall designate as defendant. The action was commenced by the plaintiff to quiet the title to a certain parcel of real estate of about seven acres, with the improvements thereon, situate in Salt Lake County, in himself as the owner in fee. The defendant, in his answer, denied the plaintiff's title, and claimed the title in fee, both by deed of conveyance from the same source through which the plaintiff claimed, and also by adverse possession under our statute. The district court found the title of the land in question to be in the plaintiff, but, notwithstanding that fact, made conclusions of law, and entered a judgment or decree whereby the plaintiff and defendant were each adjudged to be the owner of an undivided one-half interest, that is, that they were tenants in common. Both parties appeal from said judgment.

We shall not attempt to set forth the evidence in detail. The plaintiff contended at the trial, and produced evidence in support of his contention, that when the land in question was purchased in the year 1888 it was purchased for him; that he paid the full purchase price thereof, amounting to $300 or $350, and that the deed of conveyance was intended to be and was actually made to him in his true name of William Sheppick; that the land was purchased and conveyed under a parol agreement between him and the defendant that the land should be a home for the father and the mother of plaintiff, and that they should have the right to live upon it during their natural lives. There was a small house on the land at the time it was purchased. Upon the other hand the defendant contended, and produced some evidence in support of the contention, that while the plaintiff

paid for the land, it, nevertheless, was purchased for the defendant and the deed of conveyance was made to him in the name of William Sheppick and not William G. Sheppick. At the time the land was purchased the plaintiff was a young man of about nineteen years of age. He was working away from home, earning money, which, the defendant testified, he did not claim, but that it belonged to the plaintiff. The defendant and his wife, the mother of plaintiff, were poor, and neither of them enjoyed good health. There were seven children in the family, including the plaintiff, all of whom, it seems, were younger than he, and, to some extent at least, helped to support their father and mother. The family had, some time before the purchase, come to this country from England. A neighbor offered to sell the land in question to the defendant, but the latter told the neighbor that unless his son, the plaintiff, would pay for the land with his earnings, he could not buy it, as he was wholly without means and unable to earn money. For the purpose of obtaining the plaintiff's assistance the defendant says he wrote to him about the matter, and that the plaintiff then agreed to advance the purchase price for the land to the defendant. While the plaintiff admits that the defendant wrote to him concerning the matter, he, however, insists that the arrangement was that he should purchase the land for himself, and that the defendant and the mother, that is, the family, should have the use and possession of it as long as the old folks lived, and that at their death the plaintiff was to take possession of the land as the owner thereof. The plaintiff is strongly corroborated in his statement by the vendor, the neighbor aforesaid, and by other evidence. The vendor testified that he and his wife deeded the land to the plaintiff, and not to the defendant, and that such was the case was well understood by both the defendant and the plaintiff. Without going into full detail it must suffice to say that there is not only ample evidence to sustain a finding that the deed of conveyance was intended to be and was made in plaintiff's name, and that the title to the land was vested in him, but, in our judgment, the great, if not the overwhelming, weight of the

evidence is to that effect. The trial court, therefore, committed no error, as it is contended it did, in finding that the title to the land was, at the time of the purchase thereof, vested in the plaintiff.

We start out, therefore, with the title vested in the plaintiff. Did the title pass from him by virtue of the alleged adverse possession? The district court made no finding upon that issue, and counsel for the defendant contend that his rights were prejudiced by the court's failure to do so. Now, upon what does this adverse possession rest? Counsel base the claim upon the following facts, to wit: That the defendant went into possession of the land at the time it was purchased; that he and the family lived upon it for upwards of twenty years; that during all of that time the defendant, with the assistance of all of the members of the family, except the plaintiff, made certain improvements on the land, that is, they built fences and constructed a house upon it in place of the old one, at a cost of about $800; that they planted some fruit trees upon it and that the land was, during all of the time aforesaid, assessed in the name of William Sheppick, and the defendant practically paid all of the taxes assessed against it, and that the defendant and his family always treated and regarded him as being the owner of the land. Neither one nor all of the foregoing facts, however, are in any way inconsistent with the contention made by the plaintiff that the defendant had merely a life estate in the land in question; but all of them, *prima facie* at least, are in harmony with such a contention. If the land was to be made a family home, it necessarily had to be improved, because it was practically in a wild, certainly in an uncultivated, state when it was purchased. Merely making the foregoing improvements thereon is therefore not conclusive, and, under the circumstances, may not even be evidence indicating absolute ownership of the land by the defendant. Then again, the fact that the land was assessed in the name of William Sheppick, and that defendant paid the taxes thereon, is entirely consistent with plaintiff's contention. The assessment being in the name of William Sheppick points just as much

to the plaintiff as it does to the defendant. Under our stat-
ute (Comp. Laws 1907, section 2516) the assessor, before
the first Monday in May of each year, was required to
"assess such property (real estate) to the person by whom it
was owned or claimed, or in whose possession or control it
was on the second Monday of January next preceding" the
first Monday of May aforesaid. The land, under the statute,
was therefore properly assessed in the name of the defend-
ant, since it was in his possession and under his control al-
though the title thereto was in plaintiff.

But the law generally is to the effect that the land in ques-
tion was properly assessed to the defendant as life ten-
ant. In 1 Cooley on Taxation (3d Ed.) p. 723, the
author states the general rule thus:

"A life tenant should be assessed as owner during the continu-
ance of the life estate."

If the defendant, therefore, was regarded as the owner in
making the assessment, this, standing alone, gave him no
right to prefer a claim of adverse possession as against the
plaintiff. Nor does the contention that the life estate in
favor of the defendant was void under the statute of frauds,
because it rested in parol, merely in any way affect plain-
tiff's rights. For the purposes of this decision it is enough to
say that no one questioned or assailed defendant's right to be
and remain in the possession of the land during his lifetime.
The agreement contended for by the plaintiff, although rest-
ing in parol, was nevertheless fully executed. That ques-
tion, therefore, is of no consequence here either one way or
the other, and we dismiss it from the case.

Moreover, when, as in this case, the evidence justifies or
requires a finding that when the land was purchased the title
thereto was vested in the plaintiff, then, under our
statute (Comp. Laws 1907, section 2861), the pre-
sumption prevailed that the defendant's possession
was "in subordination of the legal title." This presumption
continued until it was overcome by clear proof that the de-
fendant's possession was adverse to such title. There is no

evidence in this case by which it is made to appear that the defendant at any time repudiated the title of the plaintiff until he did so a short time before this action was commenced, and which repudiation in fact was the reason why the action was commenced. Of course the defendant says he claimed the title from the date of the purchase; but, as we have seen, his claim is not sustained by the evidence. There is no evidence that the defendant, at any time, except a short time before the action was brought as aforesaid, directly disputed plaintiff's title; and, as we have seen, neither his possession nor his acts while in possession can be given the legal effect of imputing notice of such claim to the plaintiff. In view, therefore, of all of the evidence and circumstances, and of the relationship of the parties, which was not that of strangers, but was one of continual mutual trust and confidence, and of their acts and conduct, there is nothing in this case upon which a claim of adverse possession can successfully be based.

While the court perhaps should have made a finding upon the issue of adverse possession, yet, in view that no finding except one adverse to the defendant's contention was permissible under all the evidence, the error, if any was committed, was immaterial, and hence without prejudice.

This brings us to the plaintiff's appeal. A motion is interposed to dismiss his appeal upon the ground that no appeal bond was filed when the appeal was taken. The appeal is based upon Comp. Laws 1907, section 3305, which dispenses with an appeal bond in case the appellant files an affidavit of impecuniosity, as in that section provided, before the appeal is taken. The plaintiff filed such an affidavit. This was sufficient to entitle him to take and prosecute an appeal. This precise question was determined adversely to counsel's contention by this court in a recent case, namely, *Eddington v. Union Portland Cement Co.,* 42 Utah, 274, 130 Pac. 243. The motion to dismiss the appeal must therefore be denied.

In view of what has already been said we think it is apparent that the judgment by which plaintiff is awarded one-half only of the land in question cannot be permitted to stand.   In view that the district court found, and properly so, that the title to the land in question was vested in the plaintiff, we cannot, under the evidence, conceive upon what principle of either law or equity he could be deprived of one-half of what belongs to him.   No doubt the court based its conclusion upon the fact that the value of the land had been enhanced through the efforts and labor of the defendant and his family.   While it is true that the purchase price of the land was only $300 or $350, and that the value thereof, with the improvements which were placed thereon by the family, was, at the time of the trial, shown to be about $1500, yet it is also true that the defendant and the family enjoyed the usufruct of the land during all of those years with whatever improvements they placed thereon. Even the equities, therefore, were not all in favor of either defendant or plaintiff.   The legal title, however, was and now is in the plaintiff, and that gives him the right to the whole land, unless he has voluntarily disposed of it or has been legally deprived of his title.   We know of no principle, either legal or equitable, by which the plaintiff, under the facts and circumstances of this case, can be deprived of his land, or any part of it.   If we could deal with the matter in accordance with what may be termed fireside equity or justice, or from a purely moral point of view, we should perhaps not feel inclined to criticise the result reached by the district court.   We are reminded, however, that courts, under our system of jurisprudence, are not autocrats, and that their judgments and decrees must be sanctioned by and based upon established legal and equitable rules and principles, and not upon mere moral rights or claims.   From a moral point of view, the plaintiff should, perhaps, share the enhanced value of the property with his brothers and sisters, but we know of no legal or equitable principle by which he can be required to do so.   Both the father and the mother having died, he is entitled to claim his own.   The district court, therefore, erred

in attempting to enforce what may be termed to be a purely moral obligation.

From what has been said it follows that the assignments on defendant's appeal cannot be sustained, while those upon plaintiff's appeal must prevail. The judgment is therefore reversed, and the cause is remanded to the district court of Salt Lake County, with directions to set aside its findings of fact and conclusions of law so far as the same are in conflict with the views herein expressed; to vacate the judgment entered by it; to make findings of fact and conclusions of law in harmony with this opinion; and to enter a decree quieting the title to the land in question, and the whole thereof in the plaintiff, and to enjoin the executors and those claiming under them from asserting any right or title in or to the same, or any part thereof. The district court is also directed to make such an order respecting the payment of costs accrued and accruing in that court as to it may seem legal and proper. Plaintiff to recover costs on this appeal.

McCARTY, C. J., and STRAUP, J., concur.

ON APPLICATION FOR REHEARING.

FRICK, J.

The executors have filed a petition in which they contend that a rehearing should be granted to the end that the decision rendered by us "should be so modified as to permit the defendants (executors) to prove the extent to which the (value of the) land has been enhanced by reason of improvements placed upon the land by the defendants' intestate." May we do this? We think not.

No claim is made that the facts bring the case within the provisions of our statute relating to occupying claimants. Indeed, counsel base their claim squarely upon the general policy of the law or rules of equity. There is no rule of either law or equity, so far as we know, that permits a life tenant, his heirs, or those claiming under such tenant, to claim compensation for improvements or betterments made upon the estate during the continuance of the

life tenancy. All the authorities are to the contrary. Mr. Tiedeman in his work on Real Property (2d Ed.) section 68, states the rule as follows:

"The tenant for life has no claim for any improvements which he may have made upon the premises. He is bound to keep the premises in repair, but is under no legal obligation to undertake any improvements. If he does, it is a voluntary act of his own, which gives rise to no claim against the reversion for the payment of his share of the expenses. On the other hand, the tenant for life is obliged to pay all the taxes of every kind which may be assessed upon the land."

While the cases supporting the foregoiug doctrine are numerous, yet we deem it necessary to refer to a few only, all of which clearly support the foregoing quotation. See *Henry v. Brown,* 99 Ky. 13, 34 S. W. 710; *Dean v. Feely,* 69 Ga. 804; *Merritt v. Scott,* 81 N. C. 385; *Doak v. Merrill,* 38 Me. 569; *Galbaugh v. Rouse* (Ky.) 104 S. W. 959; *Frederick v. Frederick's Adm'r* (Ky.) 102 S. W. 858, 13 L. R. A. (N. S.) 514.

Nor is the principle affected by the fact that a person who is found to be a life tenant claims title to the land in question. *Henry v. Brown, supra,* and cases there cited.

Our decision is squarely based upon the fact that the defendant Sheppick, under whom appellants claim, was a life tenant, and hence the rule laid down in the foregoing authorities applies with full force.

The executors therefore have no claim against the plaintiff for improvements, and hence a rehearing, even if granted, could avail them nothing. The petition is therefore denied.

McCARTY, C. J., and STRAUP, J., concur.