DUNN et al. v. SALT LAKE & O. RY. CO.

No. 2788.    Decided September 17, 1915.    (151 Pac. 979.)

1. EVIDENCE—STATEMENTS OF EMPLOYEE—CONDITION OF APPLIANCES. In an action for the death of plaintiff's husband, an electrical machinist in charge of one of defendant railway's plants, who was killed by contact with a high-power wire, the court improperly excluded evidence of what the night watchman at the plant had told decedent as to the condition of the electrical appliances when he came to work in the morning, since the plaintiff had the legal right to prove such information as bearing upon decedent's negligence in attempting to clean portions of the apparatus; the testimony not being incompetent on the ground that the defendant was not bound by the statements of its servant, the night watchman, when the latter was not on duty, since, where the question is whether a party has acted prudently, wisely, or in good faith, the information on which he acted, true or false, is original and material evidence, and not hearsay.    (Page .....)

2. MASTER AND SERVANT—INJURIES TO SERVANT—ACTIONS—QUESTIONS OF FACT. In an action for death of an electrical mechanic in charge of one of defendant's power plants, by contact with a high-tension wire, whether deceased, on coming on duty the morning of the accident, was informed that the wire was dead, or whether he had a right to assume that the wire was dead, and whether his conduct in attempting to clean it was excusable, were questions of fact for the jury.    (Page .....)

3. TRIAL—MOTION FOR NONSUIT—ADMISSION. Where defendant moves for a nonsuit, he admits all facts directly proved, and every inference deducible from any facts proved.    (Page .....)

4. APPEAL AND ERROR—HARMLESS ERROR—EXCLUSION OF EVIDENCE LATER ADMITTED. Where questions erroneously excluded were later allowed to be answered in some form or other, the prior rulings were harmless. (Page .....)

5. MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—DEFECTIVE CHARACTER OF APPLIANCES. In an action for the death of an electrical engineer by contact with a high-tension wire, plaintiff, within the limits of her complaint, could show in what particulars, if any, the appliances of the plant were defective, deceptive, or dangerous, and was also entitled to have her experts fully explain to the jury why and wherein the plant was dangerous. (Page .....)

6. APPEAL AND ERROR—APPEAL IN FORMA PAUPERIS—STATUTE. Where an appeal was taken in forma pauperis under Comp. Laws 1907, section 3305, providing that an appeal is taken by filing with the clerk in the trial court a notice of appeal and bond, but, where the appellant files an affidavit that, owing to his poverty, he is unable to bear the expenses of the appeal, no bond shall be required, respondent could not object that the pauper appellant filed a typewritten instead of a printed abstract, since it would be contrary both to the Constitution and statutes to prevent an impecunious party from having an appeal heard by insisting upon a printed abstract.[1]  (Page .....)

Appeal from District Court, Third District; *Hon. C. W. Morse*, Judge.

Action by Rosetta Dunn and others, minors, by their guardian Rosetta Dunn, against the Sale Lake & Ogden Railway Company.

Judgment for defendant. Plaintiffs appeal.

REVERSED and cause remanded with directions to grant new trial.

*W. R. Hutchinson* and *Cheney, Jensen & Holman*, for appellants.

*King & Nibley, P. T. Farnsworth, Jr.*, and *M. E. Wilson* for respondent.

---

[1]*Eddington* v. *Union Portland Cement Co.*, 42 Utah, 274, 130 Pac. 243; *Sheppick* v. *Sheppick*, 44 Utah, 131, 138 Pac. 1169.

FRICK, J.

Mrs. Rosetta Dunn, for herself as widow, and also as guardian *ad litem* for Bella, Harry, and William Dunn, the minor children of Mrs. Dunn, and one William Dunn, deceased, brought this action against the defendant to recover damages for the death of her husband, William Dunn, which, she alleged, was caused through the negligence of the defendant corporation. The defendant owned and operated an electrically equipped railroad between Salt Lake City and Ogden, and the deceased, a machinist, was employed by the defendant at one of its sub-stations to operate and control the machinery and appliances which were used by the defendant in operating its trains by electricity. While engaged in that work, the deceased, on the 25th day of September, 1914, was killed by coming in contact with, or by approaching too close to, a copper wire which was charged with 44,000 volts of electric current. In plaintiff's complaint it is, in substance, alleged that the "transformers of said station were connected with the high-tension wires in an improper, unworkmanlike and unusual manner." The defects are then particularly described. It was further alleged that the defendant had negligently and carelessly installed and arranged certain wires and switches so that they were deceptive and dangerous to its employees, stating the particulars concerning the alleged negligence and defects. It was also alleged that the defendant was negligent in failing to "acquaint its employees with the intricacies and peculiarities of the installation and wiring in said substation." The manner and cause of death of the deceased is fully set forth, together with his age, health, and ability to earn money. The defendant, in its answer, denied all negligence, pleaded contributory negligence, assumption of risk, and that the accident was caused by a fellow servant. At the close of plaintiff's evidence the defendant interposed a motion for a non-suit, which was granted by the court, and a judgment dismissing the action was accordingly entered, from which plaintiff appeals.

After the plaintiff, by proper evidence, had fully explained the installation of the electrical appliances, switches

and wiring at the substation in question, she produced two electrical engineers to whom the manner of the installation of the electrical appliances, switches and **1, 2, 3** wiring and the entire equipment of said substation was fully detailed as the same appeared from the evidence in a hypothetical question, and their opinion or judgment was elicited as to whether the installation and equipment of the substation was proper or improper, dangerous and defective, or otherwise. Without going into detail, both of the experts gave it as their opinion that the installation of some of the switches and a part of the wiring in the substation was deceptive, improper and dangerous in certain respects. The court, in passing upon the motion for a non-suit, in referring to the proof of negligence, among other things, said:

"The respects in which the complaint alleges negligence upon which there is evidence are the two allegations: First, of the deceptive and misleading switch; second, the permitting to run this wire, that is, permitting this wire to remain a distance of only four feet and six inches above the casing of these transformers. That is the only negligence upon which there is any proof. The negligence of permitting the transformers to be charged with electricity and be alive when the party had been informed they were dead, there is no evidence to support that. The evidence shows the transformers were dead, had been disconnected, and the switches had been thrown, which diverted the current entirely from the transformers. The facts in this case are to be considered with reference to the relation the deceased bore to this plant. Without any hesitation, I would say the case would go to the jury to determine whether there was negligence if this had been some—if the accident had happened to a person who was rightfully there, and had been sent to clean the top of these transformers, without having any further knowledge than would be implied merely from that service, but there was the operator of that plant, person in charge, and who had been in charge of the plant from four to seven months, if he commenced in June, about four months, and if he had been there longer, whatever the time was; but he was in charge of this plant, he was the person who manipulated

it. There is no complaint of negligence on the part of Mr. Valarida in what he did with reference to adjusting the switches or failing to adjust them before he left."

There was therefore no question in the mind of the trial court, as there is none in ours, that there was at least sufficient proof of negligence upon the question of the equipment and installation of the substation to take the case to the jury. The trial court, however, took the position that, in view of the duties of the deceased and of his experience and familiarity with the equipment and installation of the substation, as to him there was not sufficient proof of negligence, and, further, that he, as a matter of law, had assumed the risk. Under ordinary circumstances there might be much force to the court's deduction that the deceased had assumed the risk, but in view of the peculiar situation he was placed in at the time of the accident the court's deductions are clearly fallacious. The facts in that regard, briefly stated, are as follows: The defendant employed two men, called "operators," at the substation in question, one on the night shift, and the other on the day shift. The deceased at the time in question was employed on the day shift. On the morning in question, when he went on duty, he met the night· operator, who was leaving the station. It is claimed by plaintiff that the night operator had had trouble during the night with the transformers and switches in the substation, and that he had informed the deceased of the trouble, and had told him that certain wires in the substation were "dead," or imparted information to that effect to the deceased. To show the fact, plaintiff's counsel, among others, propounded to the night operator the following questions: "What report did you make to him (the deceased) in regard to the condition of the plant?" that is, with respect to the condition of the electrical appliances in the substation. And further: "This morning, when you changed shifts, what did you say to him? What report did you make to him?"—to the deceased. Much was said in connection with the foregoing about it being the custom of the station to report to the on-coming operator, and something was also said concerning a written report. All this may, however, be disregarded. The plaintiff had the

legal right to prove, if she could, just what information was imparted to the deceased concerning the condition of the electrical appliances at the time he went to work on the morning in question. Moreover, she had a right to prove facts from which the jury might infer that the deceased in all probability relied on the information given him by the night operator, and in relying thereon attempted to clean certain portions of the electrical appliances, and in doing so, and while believing that a certain wire was "dead" and harmless, came in contact or too near to it when it was, in fact, charged with 44,000 volts of electricity, and that he thus received the shock which caused his death. Defendant's counsel, however, objected to all of the proffered evidence, upon the ground that it was "incompetent, irrelevant and immaterial, and does not in any way bind the defendant." Defendant's counsel, and, it seems, the trial court, entertained the view that the principle applicable to the relation of principal and agent was involved, and that, in view that the night operator had left the substation when he had the alleged conversation with the deceased, the former was no longer acting in the course of his employment or connected with the matters pertaining to his duties, and therefore did not represent the defendant, and could not bind it by anything he may have said. That principle is, however, not controlling, nor is it applicable here. The effect of the proffered evidence was not to bind the defendant as principal by the statement or acts of its agent. The evidence was proper for the purpose of showing what, if any, information the deceased received with regard to the condition of the electrical appliances and switches in the station. If from any information by him received he had the right to believe or assume that certain wires or other dangerous appliances were what is called "dead," and therefore harmless, his conduct in approaching or handling any of those appliances would have to be reconciled with his knowledge or belief, if well founded, regarding their condition. Of course, whether he obtained such information, or whether he had a right to assume that a portion of the wires or appliances were dead and harmless, and whether his conduct was excusable or not, were all questions of fact for the jury, and

not questions of law. This seems clear. Where one's acts or conduct are in issue, and the question arises as to whether he acted prudently and carefully, knowingly and purposely, etc., information he acted upon, if any, is always material and relevant. The rule is tersely stated in 2 Jones, Com. Ev., section 353, thus:

"Where the question is whether a party has acted prudently, wisely, or in good faith, the information on which he acted, whether true or false is original and material evidence, and not hearsay."

See, also, *Smith* v. *Whittier*, 95 Cal. 279, 30 Pac. 529.

Nor does it come within the rule governing principal and agent. The controlling question, so far as the conduct of the deceased was concerned, was not whether the switches and wires were actually dead, but what, if any, information was imparted to him regarding that subject and what he did, or rather what, under all the circumstances, was he justified in believing with respect thereto. Of course, if there had been no proof of negligence on the part of the defendant, the proffered evidence would have been immaterial, and hence its exclusion would have been harmless. But, as we have seen, the plaintiff produced at least some substantial evidence upon the question of the defendant's negligence, and hence the question of whether the deceased was guilty of contributory negligence and whether he knew and appreciated the danger of injury and had assumed the risk became very material, and should have been submitted to the jury under proper instructions. Nor is it material whether the evidence upon the question of, negligence was strong or weak. By interposing a motion for a nonsuit the defendant not only admitted every fact directly proved, but likewise admitted every inference deducible from any facts that were proved. In view that we are required to reverse the judgment, we have refrained from discussing the evidence or the effect thereof, except where it became absolutely necessary to do so.

Neither the assignment that the court erred in excluding the other evidence complained of, nor that it erred in refusing to permit plaintiff's experts to make certain explanations, constituted prejudicial error. True, the court did sustain some objections to some questions put to the experts by which

plaintiff's counsel sought to have the experts explain some of their statements, but the court afterwards practically permitted all of those questions to be answered in **4, 5** some form or another, so that the plaintiff really was not prejudiced by the prior rulings of the court. The plaintiff, no doubt, within the limits of her complaint, had the right to show, if she could, in what particulars, if any, the installation of the switches, wiring, etc., were deceptive or defective or dangerous. She also had the right to have her experts fully explain to the jury why and wherein the installation was dangerous, so long as she kept within the limits of her complaint.

Respondent's counsel have made some complaint respecting the abstract that has been filed in the case, and especially with regard to the fact that the same does not comply with the rules of this court, in that it is a typewritten **6** instead of a printed abstract. This appeal was taken *in forma papueris* under our statute (Comp. Laws 1907, section 3305). We have twice held that appeals may thus be taken. *Eddington* v. *Union Portland Cement Co.*, 42 Utah, 274, 130 Pac. 243, and *Sheppick* v. *Sheppick*, 44 Utah, 131, 138 Pac. 1169. In view that it is a constitutional right to take an appeal in this state, and our statute provides that, where impecuniosity is shown, all statutory fees and bonds are dispensed with, it would be contrary to both the spirit of the Constitution, as well as that of the statute, if this court, by insisting upon a printed abstract, should prevent an impecunious party from having his appeal heard in this court. To avoid that, and in furtherance of justice, this court permitted a typewritten abstract to be filed in this case.

For the reasons stated, the judgment is reversed, and the cause is remanded to the District Court of Salt Lake County, with directions to grant a new trial; appellant to recover the costs of filing her appeal and printing her brief. The costs for filing the appeal shall, however, be paid to the clerk of this court for the use of the state, as provided by Comp. Laws 1907, section 1019.

STRAUP, C. J., and McCARTY, J., concur.