## HAMMOND v. JOHNSON et al.

No. 5813.   Decided January 18, 1938.   (75 Pac. 2d 164.)

For former opinion, see 66 P. 2d 894, 94 Utah 20.

*F. B. Hammond,* of Price, for appellant.

*B. W. Dalton,* of Los Angeles, Cal., *Mitchell Melich,* of Moab, and *M. E. Wilson,* of Salt Lake City, for respondents.

LARSON, Justice.

Respondents, by petition for a rehearing have prompted us to again examine the record with a critical eye, and we find some irregularities in the record of the proceedings in the trial court which make it advisable that we take note of some of them.

It is first contended that Julia Hills Johnson, one of the defendants in the final determination of the cause in the district court, was not properly before the trial court, nor represented, nor served with notice of appeal. During the pendency of the action, J. H. Johnson, one of the defendants, died. Letters testamentary of his estate were granted to Julia Hills Johnson by the district court of San Juan county. A motion by counsel for plaintiff, supported by affidavit, and consented to in writing by Mitchell Melich, attorney for Mrs. Johnson, was granted by the court, substituting Julia Hills Johnson, as executrix of the estate of J. H. Johnson, deceased, as a party defendant in the place of J. H. Johnson, deceased, and reviving and continuing the action under such name without prejudice to any prior proceeding. Thereafter, the proceeding continued through trial and appeal; B. W. Dalton, who had represented all defendants, continuing to appear as counsel for all of them, including Mrs. Julia Hills Johnson. We think the record amply sustains the conclusion that Dalton properly represented Julia Hills Johnson throughout the trial and on appeal.

Another question is presented as to whether there is any final judgment entered in the cause, from which an appeal would lie. The action was originally commenced in the district court of San Juan county. On November 14, 1934, the following minute order was entered in that court:

"Pursuant to a stipulation made by counsel for the respective parties in this case, in the District Court of Grand County, State of Utah, on November 13, 1934, it is now ordered by the court that this case be, and the same is hereby transferred to Grand County, State of Utah, *for trial and disposition.*" (Italics added.)

It is now contended by counsel for respondents, who, on petition for a rehearing, appear for the first time as counsel, that since the cause was transferred to Grand county *"for trial and disposition,"* and there appears no order sending it back to San Juan county, the action is still in Grand county; and since this appeal comes up from San Juan county there is no action in San Juan county in which the judgment could be entered, and the same is therefore a nullity. No judgment appears to have been entered in Grand county, and, therefore, it is argued, there is no judgment from which to appeal. The record discloses these further facts: On November 13, 1934, the following minute entry relative to this cause appears in the record of the district court of Grand county: " This case which is pending in San Juan County, State of Utah, and which upon stipulation of F. B. Hammond, attorney for the plaintiff, and B. W. Dalton, attorney for the defendants, this day made in open court, is to be transferred from San Juan County, State of Utah, to Grand County, State of Utah, for hearing and trial, and is to be tried jointly with the case of J. H. Johnson et al. plaintiffs vs. A. F. Barber et al. defendants now pending in this court, came on for hearing before the court upon the demurrer. * * * Upon motion of B. W. Dalton, attorney for defendants, it was ordered by the court that this case be set down for trial to commence November 19, 1934, at the hour of 10 o'clock A. M." Then follows the minute entries of various dates covering the hearings, and the final minute entry from Grand county under date of November 22, 1934, reads: " * * * both sides rested. The court listened to the argument of respective counsel, and takes the case under advisement."

There is no further record in Grand county, but on August 7, 1935, the minute records of the court in San Juan county show counsel for both plaintiff and defendants present before the court, and arguing matters pertaining to the form and substance of the findings of fact and conclusions of law. On September 27, 1935, in the San Juan county court, a motion for a new trial was made, argued, and denied.

All pleadings, orders (except minute orders covering the taking of evidence on the trial), findings of fact, conclusions of law, judgment and decree, notice of appeal, and orders settling the bill of exceptions are entitled and filed in the district court of San Juan county, and that court certified the record to us. While the minute entry at San Juan indicates that the cause was sent to Grand county for trial and disposition, and there appears no order sending the cause back from Grand county to San Juan, all the other minute entries, orders, and proceedings, the conduct of the parties, counsel, and the court, clearly show that the intent, effect, and purpose of the stipulation and order was merely to take the evidence in Grand county in conjunction with the case of Johnson v. Barber, involving, in part at least, the same properties and witnesses. The matter having been so treated by the parties, counsel, and the court, and not questioned below or on appeal here in the first instance, we must conclude that such was the stipulation of the parties and the order of the court, and the judgment was properly entered in the district court of San Juan county.

A brief has been filed on behalf of the state engineer in support of the petition for a rehearing. He is not a party to the action, but filed a brief, urging that we reconsider our decision, because he thinks the opinion as rendered, 66 P. 2d 894, 896, affects the right of the state and deprives it of rights in the waters. We have carefully read and considered his arguments along with those of respondents, and conclude they are founded upon a misapprehension of the opinion as rendered. The cause was brought, tried, and presented on appeal as an action to quiet title. It

is fundamental that a judgment in such an action affects no one but the parties and those claiming through or under them. All any court determines in such action is that the prevailing party has a title superior to, or good as against, that asserted by his adversary. All we decided, all we could decide, is that plaintiff has established a title or right 'to the use of this water, superior to, or good as against, the title or claim the defendants asserted, or could have asserted, at the time of trial. Plaintiff, as an adverse claimant acquired all the rights which defendants had, or could assert or claim, in and to the waters in question at the conclusion of his statutory time of adverse user. And the acquisition of such right by plaintiff cannot be disputed except by defendants, or some one claiming a prior acquisition through defendants of the rights to the water. The opinion does not bar, or affect, any rights which the state or any other person, not a party or claiming under a party, had or could assert in or to the waters in question.

In the opinion as handed down, there appear two clerical errors. The opening sentence reads: "This is an appeal upon the judgment roll from a decree and judgment of the district court of Grand county." The sentence should read, "of the District Court of San Juan County." The order at the close of the opinion reads: "The cause is remanded to the district court of Grand county with directions," etc. It should read: "The cause is remanded to the District Court of San Juan County with directions," etc. The corrections will be noted in the official opinion and the cause remanded accordingly.

The petition for a rehearing is denied.

HANSON and MOFFAT, JJ., concur.

WOLFE, Justice.

I dissent. I think we should have a rehearing in order that we may determine whether title to a water right may be obtained against any one by adverse possession. If A. has a water right which he had exercised by taking his water

through a ditch from the stream and B. on the ditch above him uses all of this water for five years, if may be an abandonment by A. But it takes seven years for B. to obtain title by adverse possession, and then he would obtain it in a negative way by having a good defense against the real title holder. But who is the title holder during this last two years? If abandoned, it reverts to the public. Can B. obtain the adverse possession against the public? Certainly if, instead of diverting from A.'s ditch what formerly was A.'s water, he took it from the stream himself for those two years, he could not claim adverse possession against A. He could hardly claim adverse possession against any of the other water users on the stream. If before A. abandoned his water there was not enough water to satisfy the rights of other users subsequent in right to A., could B. claim as against all these users the water abandoned by A. which would feed the rights of these users? Can there by any difference in the nature of the right it is claimed B. obtained if he took water through A.'s ditch as distinguished from taking it from the stream? I can hardly see how B. obtains a right against A. who no longer had title after the five years in which A. failed to use the water. Or, put another way, if he obtained an adverse right against A., he obtained it equally against all appropriators who rights came subsequent to A. But this appears to be contrary to the case of *Deseret Live Stock Co.* v. *Hooppiania,* 66 Utah 25, 239 P. 479; *Glover* v. *Utah Oil Refining Co.,* 62 Utah 174, 218 P. 955, 31 A. L. R. 900.

Moreover, on principle, I have doubts whether a person can obtain adverse possession of a right as distinguished from lands. The right to use water is a right only to the use of water, and that water becomes the property of the appropriator only when it is reduced to possession. I may obtain title by adverse possession of land which I can adversely occupy and possess, but how can I adversely possess a right? If a life tenant, as against the remainder man, has a right to cut cordwood for fuel from the woodlands, can some one

having no relation to the remainderman and no consent of the life tenant obtain the life tenant's right by taking the cordwood? Or, better still, is an illustration where one has a right to pasture his cows in the commons. May some outsider by pasturing his cattle there illegally obtain the right of the other to pasture by a so-called adverse user or possession? May one who is using water which another has the right to use from the common source of water, like from the common source of pasture, obtain adverse possession of the other's right to use water? Water, for purposes of recording and transfer, is considered as real estate, but does that mean it has all the attributes of real estate? Can any one occupy or possess fugitive water? Certainly, the law cannot give the same physical properties to running water as real estate possesses. I am concerned about these conceptions. Can one by purporting to use something another has the right to use gain title by so-called adverse user rather than by adverse possession? If so, can this be done when the failure on the part of the one legally entitled to use the water, works an abandonment and a reversion to the common source of the water, when title to the water in the common source is in the public or feeds rights of subsequent appropriators. The law specifies no right may be obtained therein except by appropriation, which is obtained after the culmination of certain prescribed steps.

I vote for a rehearing in order that we may obtain argument on these matters.

FOLLAND, Chief Justice (dissenting).

For the reasons stated by Mr. Justice WOLFE, and also for other reasons that appear in the petition for a rehearing, I vote for a rehearing.