## BANK OF VERNAL v. UINTAH COUNTY
### et al. (two cases).

Nos. 7794, 7795.   Decided November 20, 1952.   (250 P. 2d 581.)

See 2 C. J. S., Adverse Possession, sec. 227. Title by adverse possession under invalid tax title. 1 Am. Jur. 129; Adverse Possession, sec. 129; 22 A. L. R. 550.

*Edward F. Richards, Irwin Clawson,* Salt Lake City, for appellant.

*Clyde S. Johnson,* Vernal, *Lee Neff Taylor, F. A. Linsley, Edward G. Linsley,* Salt Lake City, for respondent.

CROCKETT, Justice.

The Bank of Vernal, plaintiff, had judgment in both of these actions quieting title to four 40-acre tracts of land.

Valborg B. T. Lowe maintains that she is not and never has been a party defendant and hence the judgment is void against her.

Defendant Paul Holger Lowe, her brother, asserts that the trial court erred in decreeing title to plaintiff, and rejecting his counterclaim by which he asserted ownership of the property by adverse possession.

The record clearly bears out the contention of Valborg that she was never made a party to the action. The Bank bases its contention that she was a party upon a purported stipulation at trial. It is true that while she was on the witness stand, counsel for the Bank and defendant Lowe agreed that the she should become a party defendant. When asked if she would object to this and to adopting her brother's counterclaim, Valborg's answer was that she felt the need of some advice on the subject. Counsel, realizing that she had not answered the question, asked her if she would like to think about it and answer it after the noon recess. She said, "Yes.", but the record discloses no later answer to that question or reference to the subject. Valborg took no part in the proceedings other than as a witness and did not agree to become a party nor to accept her brother's pleadings as her own, and the court made no order whatsoever concerning her being made a party. It is obvious that a witness cannot be made a party merely by stipulation of the plaintiff and defendant. Under such circumstances, whatever rights, if any, Valborg may have in this property are not concluded by this action[1] and are not before us for review. We therefore proceed to consider the appeal only as to Paul Holger Lowe, herinafter referred to as Lowe.

In 1932, one S. B. Herron foreclosed a mortgage on the disputed property against Valborg, who then owned it, and bought it in on foreclosure sale. Herron leased it back to Valborg for the years 1933 and 1934, giving her an

---

[1]*Hammond* v. *Johnson*, 94 Utah 35, 75 P. 2d 164.

option to repurchase which was never exercised. On April 19, 1934, Herron mortgaged to the plaintiff Bank of Vernal, which later foreclosed on him and bought the land in on foreclosure sale, August 19, 1939, the sheriff's deed being dated March 1, 1940. The bank permitted the taxes to go delinquent, and on May 21, 1945 Lowe bought a defective tax title to the land from Uintah County.

The plaintiff Bank brought this action in 1948 against Lowe and Uintah County; the County defaulted. Defendant Lowe does not contend that his tax title is valid. His evidence shows that the Lowes, one or the other or both, have had some semblance of possession of the property since 1919 and since 1934 have used it for grazing purposes. He claims title by adverse possession and also asserts that because the Bank was not in actual possession within seven years from the filing of the action it is barred from maintaining the cause by 104-2-5, U. C. A. 1943:

"No action for the *recovery of real property or for the possession thereof* shall be maintained, unless it appears that the plaintiff, his ancestor, grantor or predecessor was seised or possessed of the property in question *within seven years* before the commencement of the action." (Italics supplied.)

and by 104-2-6, U. C. A. 1943:

"No cause of action  *  *  *  founded upon the title to real property  *  *  *  shall be effectual, unless it appears that the person prosecuting the action  *  *  *  or under whose title the action is prosecuted  *  *  *, or the ancestor, predecessor or grantor of such person was seised or possessed of the property in question within seven years before the committing of the act in respect to which such action is prosecuted  *  *  *."

The Bank counters by stating that it has had legal title since 1939 by reason of which it has been and is seised of and is in constructive possession of the land, buttressing its position by quoting 104-2-7, U. C. A. 1943:

"In every action for the *recovery of real property, or the possession thereof,* the person establishing a legal title to the property shall

be presumed to have been possessed thereof *within the time required by law;* and the occupation of the property by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that the property has been held and possessed adfersely to such legal title for seven years before the commencement of the action." (Italics supplied.)

Although the presumption statute, just quoted, by its terms, applies to actions for the "recovery" or "possession" of real property, the presumption also obtains in any action in which the title to or the right to possession of real property is in issue, including actions to quiet title. ▮ Once a title to realty has been adjudged good, and all adverse clamis enjoined, the title carries with it the right of possession, which is the most important single incident of ownership. In a quiet title action, the plaintiff wants to establish the right of possession for himself or for someone claiming under him so that he may enjoy unmolested possession or so that his title will be marketable for sale or lease to one who wants possession. The cause is in essence one for the possession of the property, and the presumptions mentioned in the above quoted statute apply.

In accord with this is the case of *Sheppick* v. *Sheppick,*[2] a quiet title action in which the claim for relief was substantially the same as in the instant case;[3] there this court stated:

"* * * when, as in this case, the evidence justifies or requires a finding that when the land was purchased the title thereto was vested in the plaintiff, then, under our statute (Comp. Laws 1907, § 2861 [identical to 104-2-7, U. C. A. 1943, the statute with which we here deal]), the presumption prevailed that the defendant's possession was 'in subordination of the legal title.' "

---

[2]44 Utah 131, 138 P. 1169, 1171.
[3]As determined from the abstract of the record.

Therefore, when the Bank acquired legal title by purchase at the foreclosure sale in 1939, it became entitled to the presumption of possession.[4] Lowe answers that the Lowes have been in actual possession of the disputed land since 1919, and as a consequence the presumption is not operative. That argument is met by the portion of the statute stating that occupation of the property by a person other than the holder of legal title

"shall be deemed to have been under and in subordination to the legal title * * *."

This presumption is prima facie sufficient to meet the requirements of "Seisin or Possession" provided by Secs. 104-2-5 and 6, U. C. A. 1943, and cast upon defendant Lowe the burden of affirmatively showing

"that the property has been held and possessed adversely to such legal title for seven years before the commencement of the action"

as specified in Sec. 104-2-7, U. C. A. 1943, above referred to.

The point of critical importance is whether Lowe's possession and claim of title was adverse against the world,[5]

---

[4]*Sheppick* v. *Sheppick, supra; English* v. *Openshaw,* 28 Utah 241, 78 P. 476. See *Haney* v. *Kinevan,* 73 Cal. App. 2d 343, 166 P. 2d 361; *Ives* v. *Grange,* 42 Utah 608, 134 P. 619; *Gibson* v. *McGurrin,* 37 Utah 158, 106 P. 669; *Cottrell* v. *Pickering,* 32 Utah 62, 88 P. 696, 10 L. R. A., N. S., 404; *Hennessey* v. *Title Insurance & Trust Co.,* 68 Cal. App. 235, 228 P. 714; *South Tule Independent Ditch Co.* v. *King,* 144 Cal. 450, 77 P. 1032; *Murphy* v. *Crowley,* 140 Cal. 141, 73 P. 820; *City of Oakland* v. *Carpentier,* 13 Cal. 540.

[5]Implicit in Sec. 104-2-10, U. C. A. 1943: "Where it appears that there has been an actual continued occupation of land under *claim of title, exclusive of any other right,* but not founded upon a written instrument, judgment or decree, the land so actually occupied * * * is deemed to have been held adversely." (Italics supplied.) 1 Am. Jur., Adverse Possession, Secs. 136, 137, 141 and 187. See *Central P. R. Co.* v. *Tarpey,* 51 Utah 107, 168 P. 554, 1 A. L. R. 1319. See 2 C. J. S., Adverse Possession, § 59.

in order to determine whether he has established sufficient possession to overcome the presumption of possession inuring to the Bank on account of its legal title. Defendant's own evidence concerning the nature of his claim and possession show that he failed in this regard, excerpts of which are as follows:

"Q. Now when did you first get an interest in this land or these sheep? When did you have a definite agreement? A. Well,—

"Q. Wasn't it in 1946? A. Yes, about that time. When [sic] bought the land.

&ast;  &ast;  &ast;  &ast;  &ast;

"Q. Now, Mr. Lowe, when did you take possession of . . . [the disputed property]? A. When I bought it for taxes.

"Q. When you bought it for taxes? A. [Nods head]

"Q. And that was in 1945? A. Yes.

&ast;  &ast;  &ast;  &ast;  &ast;

"Q. Well, when was it that you first started claiming this land as your own? A. After [sic] bought it from the county.

"Q. After you bought it from the county. Now before you bought it from the county did you claim the land was your own? A. Well, in a way.

&ast;  &ast;  &ast;  &ast;  &ast;

"Q. What do you mean by in a way? In what way did you claim it [the disputed land]? A. Oh, I figured more-or-less right to it. Always had. Just as much as anybody else."

This testimony of the defendant Lowe shows that his claim of ownership before 1945 was at most equivocal and surely not an exclusive claim of title. This interpretation is reinforced by his further admissions:

"Q. Now how, Mr. Lowe, could you claim when you knew that your sister claimed the property; how did you claim it against her since 1934? A. Because I was to have half interest in it, and doing the work and improvement.

&ast;  &ast;  &ast;  &ast;  &ast;

"Q. You claimed if your sister had an interest, you claimed an interest; is that right? A. Yes.

&ast;  &ast;  &ast;  &ast;  &ast;

"Q. You knew that she claimed the ownership of this land when she was in debtor's relief [in 1940] did you not &ast; &ast; &ast;? A. Yes."

The foregoing testimony indicates that Lowe's claim was not only not definite as to his own claim of title, but also whatever title he did claim was subservient to the claim of his sister. Of course, under proper circumstances, two individuals claiming together may establish title in themselves by adverse possession against the world.[6] But that problem is not presented to us on this appeal; Lowe relies upon his own claims of adverse possession and his sister Valborg has not joined with him.

Lowe undoubtedly did sufficiently claim both title and possession against the world after he bought the tax title in 1945, so that if it had continued long enough he would have established title as he claims. The commencement of this action in 1948 interrupted that possession and defeats his title. Upon a review of the record we are unable to say that the court erred as a matter of law in its conclusion that he failed to rebut the presumption of possession which inured to the benefit of the Bank because of its legal title.

Controversy also exists as to whether the land was "protected by a substantial inclosure"[7] by fencing, and whether there was sufficient payment of taxes by defendant Lowe to enable him to claim by adverse possession. These questions are now moot for the purposes of this opinion and need not be discussed or decided.

In case No. 7795, the lower court is directed to vacate the decree as it applies to Valborg; otherwise the judgments are affirmed. Costs to appellant Valborg Lowe, and to respondent Bank of Vernal as against P. H. Lowe.

WOLFE, C. J., and McDONOUGH, WADE and HENRIOD, JJ., concur.

---

[6] 2 C. J. S., Adverse Possession, § 52.
[7] See Sec. 104-2-11, U. C. A. 1943.