ROBERT K. SMITH, RESPONDENT, *v.* R. T. JONES,
ET AL., APPELLANTS, AND ROBERT K. SMITH,
RESPONDENT, *v.* J. L. FORBES, ET AL., APPEL-
LANTS.

CONTRACT — PURCHASE OF MINING PROPERTY — PARTICULAR CONDI-
TIONS — WHEN CONSTITUTES OPTION COUPLED WITH LICENSE.
PERFORMANCE BY ONE PARTY — NECESSARY TO COMPEL SPECIFIC
PERFORMANCE — EQUITABLE TITLE. OWNERSHIP — OF SURFACE
RIGHTS — OF RIGHT TO MINE — PARTITION.

*Contract — Purchase of Mining Property — Particular Conditions —
When Constitutes Option Coupled with License.*

> A contract by plaintiff to sell, and by defendants' predecessors
> in interest to buy, certain mining property, which contract is
> personal, and does not in terms run to heirs and assigns, and
> under which the prospective grantees, although given posses-
> sion, could neither sell nor assign without grantor's consent,
> until they had become entitled to a deed by performance of
> certain conditions, one of which was to pay grantor a certain
> sum out of the property, is a mere option to purchase with
> a license to extract ore, and not a covenant running with
> the land.

*Performance by One Party — Necessary to Compel Specific Performance
— Equitable Title.*

> It is only when a party, holding a contract of purchase, has by
> performance on his part, placed himself in a position to com-
> pel specific performance, that he holds the equitable title.

*Ownership — Of Surface Rights — Of Right to Mine — Partition.*

> The surface of mineral lands may be owned by one person and
> the mineral underneath by another, each with an indefeasible
> title; when so owned they constitute separate corporeal here-
> ditaments with all the incidents of separate ownership, and

the surface land may be partitioned the same as where there is no mineral under it.

(Decided March 31, 1900.)

Appeal from the Third District Court, Salt Lake County, Hon. Ogden Hiles, *Judge.*

There were two cases, the issues of which were identical, and both tried together; in each of these cases the action was brought to quiet title. From a judgment for plaintiff, defendants appealed. *Affirmed.*

*Messrs. Powers, Straup & Lippman,* and *W. C. Hall, Esq.,* for appellants.

Where a contract to sell and convey land is made, a large part of the purchase price paid in cash and promissory notes executed for the remainder, but the non-payment of such notes, at maturity or otherwise, is not made a ground of forfeiture or rescission of the contract, and the purchaser takes possession of the land, and makes substantial improvements thereon, and meanwhile it increases in value, and such possession is retained for nearly twenty years, and never agreed to be surrendered, but the purchase money notes were never paid, and their collection is now barred by the statute of limitations, *Held,* that the vendor can not, during non-occupancy of such land by the vendee, lawfully re-enter possession, and hold it, merely because of the non-payment of the notes; and, further, *Held,* that, in the event he does so re-enter, ejectment by the vendee will lie to recover possession. *Usher* v. *Hollister,* 49 Pa., 525; *Whittier, et al.,* v. *Stegè,* 61 Cal., 238.

Equity will not decree a forfeiture of a vendee's rights under a contract for the sale of a mining claim, and thereby

deprive him of the possession of the mine and the amount paid toward the purchase price, although he may have failed to work the mine as required by the contract, and to pay the balance of the purchase price when due. *Mc-Cormick* v. *Rossi*, 15 Pac., 35; *Farley* v. *Vaughn*, 11 Cal., 227; *Hulshizer* v. *Lamoreux*, 58 Ill., 72; *Hill* v. *Grigsby*, 35 Cal., 656.

Where a contract is made for the sale of land, equity considers the vendee as the owner of the real estate sold, and the purchaser as a trustee for the vendor for the purchase money. *Richter* v. *Selin*, 8 S. and R., 439; *Smith* v. *Phœnix Ins. Co.*, 91 Cal., 330.

*J. R. Bowdle, Esq.*, and *Messrs. Morse & Whittemore*, for respondent.

For a covenant or contract to run with the land, an estate must be conveyed to which the covenant or contract can attach. 2 Washburn on Real Property (3d ed.), 262, foot pages 13–16; Spence's Case, 1 Smith Lead. Cases, 174.

" Where one who makes a contract with another in respect to land, neither parts with, nor receives any title or interest in the land at the same time with, and as a part of the making of the covenant, it is at best a mere personal one, which neither binds the assignee nor inures to the benefit of the assignee or the covenantee so as to enable the latter to maintain an action in his own name for a breach thereof." 2 Washburn on Real Property (3d ed.), 262, foot page 13.

" There was no grant of any interest in the real estate of either party to which the covenant could he annexed." *Hurd* v. *Curtis*, 19 Pick., 459; *Van Rensselaer* v. *Bonesteel*, 24 Barb., 365.

"The right of action passes from the original covenantee only by the conveyance of some estate to which the covenant is incident." 19 Am. and Eng. Ency. of Law, 988, and cases cited.

This contract was an option to purchase with a license to extract mineral from the land, and could not be enforced against McGuire and associates; no estate or interest in the land did or could pass by this contract. 1 Warville on Vendors, Sec. 2, p. 187, and Sec. 24, pp. 142, 143.

"A mere contract or obligation to convey land at a future time, on the purchaser performing certain acts, does not create an equitable title in such purchaser; it is only when he performs all acts necessary to entitle him to a deed that he has an equitable title which a court of equity will enforce." *Chappell* v. *Knight*, 108 Ill., 570; *Sutherland* v. *Perkins*, 75 Ill., 339.

For a covenant to run with the land, its performance or non-performance must affect the nature, quality, or value of the property demised independent of the collateral circumstances, or it must affect the mode of enjoyment, and there must be a privity between the contracting parties. *Wiggins F. Co.* v. *O. & M. R. Co.*, 94 Ill., 83; Lawson's Rights and Remedies, Sec. 2303; 1 Washburn on Real Property, 327.

If there was a possibility of this being a contract running with the land, by the agreement of the parties, they could provide it should not, and such agreement would be binding. *Masury* v. *Southworth, et al.*, 9 Ohio St., 348.

The appellant contends that plaintiff can not maintain a suit for partition only of surface ground. In answer to this proposition, we beg leave to submit the following authorities: 1 Washburn on Real Property, 17; 1 Lindley on

Mines, Sec. 9; 31 Pa. St., 475; 109 Pa. St., 583; 2 Lindley on Mines, Sec. 212; 16 How. Prac., 473; 13 Morrison Mining Reporter, 40; 28 Barb., 336; 14 Morrison Mining Reporter, 243; 55 N. Y. Court of App., 538.

STATEMENT OF FACTS.

In each of these cases the action was brought by the plaintiff to quiet title in him to an undivided one-fifth interest in the surface of a certain parcel of land situated in Bingham Canyon, Utah, and for partition thereof. By agreement the two causes were consolidated, their issues being identical, and the same decree was entered in each.

The plaintiff introduced in evidence a patent from the United States, dated July 30, 1881, and issued to the plaintiff, Thomas Gibbons, John McGuire, and the heirs of William Gibbons, for the McGuire and Company's placer mining claim. The premises described in the complaint were included in the patent, and the patent conveyed to the plaintiff an undivided one-fifth thereof.

The defendants introduced in evidence an agreement dated October 17, 1877, in which the plaintiff agreed to convey, by quitclaim deed, to John McGuire, Alexander Maberry, Frank Webb, Thomas Gibbons, and William Gibbons, his one-fifth interest in a certain drain ditch, for $200 cash in hand paid, and for the further sum of $5,000 to be paid to him, as will appear from an extract of the agreement which reads as follows: "And the said parties of the second part in consideration of the above described placer mining property and drain are to take, have, and receive into their possession, in the date of this lien first above written, quiet and peaceable possession of said interest, and further agree to pay to said party of the first part the sum of five thousand dollars ($5,000) to be paid only from the proceeds of ore, gold dust, or

minerals taken therefrom, upon the following conditions, to wit:

The first payments to be made from said source is the payments of all labor therein performed at the rate of four dollars to the man for each day's labor thus performed.

Second, to pay all the just debts now owing by said company to different parties.

Third and last, to pay said sum of five thousand dollars from the proceeds of said mine after making the above payments as mentioned.

And it is further understood that the said party of the first part shall have the right at all times, himself or his legal representatives, to visit and inspect the said mine and be present and examine at any or all washings or cleaning up of the gold dust, it being further understood that the gold dust thus taken out for said payments is from the entire mine; it being also understood that said parties of the second part can not sell or quit this interest until this agreement is fully satisfied, or by consent of said party or his legal representative.''

The evidence shows that John Mc Guire, Frank Webb, Thomas and William Gibbons were dead before this suit was brought; that A. Maberry had conveyed his interest in the property; that none of the parties to the contract, except the plaintiff, have now any interest in the land, and there is nothing to show that any assignment of the contract was made. The court found that the plaintiff is the owner of one-fifth interest in the land, as tenant in common with the owners of the balance, and entered a decree to that effect. It also decreed that the land be partitioned. Thereupon the defendants appealed.

BARTCH, C. J., after stating the case as above, delivered the opinion of the court.

The appellants contend that the court erred in holding that the contract, introduced in evidence by the defense, does not constitute a covenant running with the land.

The respondent insists that the contract was merely an option to purchase, with a license to extract mineral from the land.

An examination of the instrument shows that it was personal to Mc Guire and associates. It did not in terms run to heirs or assigns. The prospective grantees mentioned therein, under its terms could neither sell nor assign the interest to be conveyed to them, without the grantor's consent, until they had performed all the conditions, and become entitled to the deed. One of these conditions was that, before conveyance of the land to them, they were to pay the owner, or grantor, $5,000 out of the ore to be mined, in addition to the $200 cash paid at the time of making the contract. It is true Mc Guire and associates were entitled to and received possession of the premises under the agreement for the purpose of mining ore, but the legal title to the land or interest was not conveyed to them by that instrument. The owner simply bound himself to convey in the event of the performance of the conditions, but, as the conditions were never performed by the parties to the contract, he was never divested of the legal title. None of the defendants, except Maberry were parties to the agreement, and Maberry, although served with summons, defaulted, and, it appears, claims no interest in the contract. None of the parties with whom the agreement was made, have been in possession of the land or have extracted ore from it for several years. Under these circumstances, we are of the opinion that the contention of the respondent is correct. The contract was simply an option to purchase, by its terms not assignable, and was not in the nature of a covenant

running with the land. It, therefore, can not avail the defendants in this case. There was conveyed no absolute title to or interest in the land, and there was no privity of estate in the land between Smith and McGuire and associates; nor was any created by the contract.

"When one who makes a covenant with another in respect to land neither parts with nor receives any title or interest in the land, at the same time with and as a part of making the covenant, it is at best a mere personal one, which neither binds his assignee nor enures to the benefit of the assignee of the covenantee, so as to enable the latter to maintain an action in his own name for a breach thereof." 3 Washburn on Real Property (4th ed.), 284; Spencer's Case, 1 Smith's Leading Cases, 174; *Hurd* v. *Curtis*, 19 Pick., 459; *Newburg Petroleum Co.* v. *Weare*, 44 Ohio St., 604; *Van Rensselaer* v. *Bonesteel*, 24 Barb., 365.

Nor was the nature of the contract such as to create an equitable title in the purchasers. Smith could not enforce performance on the part of those with whom he contracted. The consideration of $5,000 was to be paid only out of the mineral to be produced, and the mineral was a thing not in *esse*, but formed a part of the earth, and the agreement contained no provision by which its production could be compelled, and there was no obligation to convey the land until the consideration was paid. The agreement was but an option to purchase and gave to the prospective purchasers a right to extract ore.

"A mere contract or covenant to convey at a future time, on the purchaser performing certain acts, does not create an equitable title. It is but an agreement that may ripen into an equitable title. When the purchaser performs all acts necessary to entitle him to a deed, then, and not till then, he has an equitable title, and may com-

pel a conveyance. (Bispham's Equity, Sec. 365.) When the purchaser is in a position to compel a conveyance by a bill in chancery, he then holds the equitable title. Before that he only has a contract for a title when he performs his part of the agreement." *Chappell* v. *McKnight* 108 Ill., 570; Warvelle on Vendors, p. 187 Sec. 2; *Sutherland* v. *Parkins*, 75 Ill., 338.

Nor is the contention of appellants, that suit, for a partition of the surface ground merely, can not be maintained, well founded. The law is well settled that, as to mineral lands, the surface may be owned by one person and the mineral underneath by another, and that each owner may have an indefeasible title. When the surface and underlying mineral strata are separately owned, they constitute separate corporeal hereditaments, with all the incidents of separate ownership. This being so, the surface land when owned separately from the mineral, may be partitioned the same as where there is no mineral underlying it. "Where there are mines, State quarries, and the like, in land, there may be a double ownership of such land, one of the mines, the other of the soil, and these may be held by different persons by separate and independent titles, each having a fee or lesser estate in his respective part." 1 Washburn on Real Property (4th ed.), 17; 1 Lindley on Mines, Sec. 9; *Caldwell* v. *Fulton*, 31 Pa. St., 475; *Railroad Co.* v. *Sanderson*, 109 Pa. St., 583; *Canfield* v. *Ford*, 16 How. Pr., 473; *Marvin* v. *Brewster Iron Min. Co.*, 55 N. Y., 538; *Harris* v. *Ryding*, 5 M. & W., 59; *Green* v. *Putnam*, 8 Cush., 21.

We do not deem it important to discuss any other question presented in this case.

The judgment is affirmed, with costs.

MINER, J., and BASKIN, J. concur.