## CENTRAL PAC. RY. CO. v. TARPEY et al.

No. 2993.   Decided September 26, 1917.   On application for rehearing November 19, 1917.   (168 Pac. 554.)

1. ADVERSE POSSESSION—NECESSITY OF INCLOSURE—CULTIVATION OR IMPROVEMENTS. Under Comp. Laws 1907, section 2864, providing that where there has been an actual continued occupation of land under claim of exclusive title not founded upon a written instrument, judgment, or decree, the land so actually occupied and no other shall be deemed held adversely, and section 2865 providing that for the purpose of constituting an adverse possession in such a case, land is deemed to have been possessed and occupied only where it has been protected by a substantial inclosure, where it has been usually cultivated or improved, or where labor or money has been expended upon dams, etc., for the purpose of irrigating the lands, where defendants' claim of title was not founded upon a written instrument, but was based upon actual possession, an open, notorious, peaceable occupation under claim of right was not sufficient without actual cultivation or improvement, or money expended for irrigation or an inclosure.   (Page 114.)

2. ADVERSE POSSESSION—COLOR OF TITLE—CONTRACTS OF SALE—
"CONVEYANCE." A contract by T. for the sale of land described
as lands of a railroad company to which it was or should become
entitled, which provided that upon certain payments being made
and upon the issuance of a patent from the United States, a deed
for the conveyance of the land would be executed and delivered,
was not a "conveyance" constituting color of title, under Comp.
Laws 1907, section 2862, providing that when the occupant of land
or those under whom he claims entered into possession under claim
of exclusive title founded upon a written instrument, as being a
conveyance of the property, and there has been a continued occu-
pation and possession for seven years, the property so included shall
be deemed to have been held adversely. (Page 115.)

3. ADVERSE POSSESSION—POSSESSION BY EXECUTORY PURCHASER—
ADVERSE CHARACTER OF POSSESSION. The purchaser's right to claim
adversely to T. and the railroad company began only when he had
performed all the conditions of such contract and became entitled
to a conveyance of the property. (Page 118.)

4. VENDOR AND PURCHASER—CONSTRUCTIVE NOTICE—RECITALS IN CON-
TRACT. Assuming that the purchaser's ignorance of the railroad
company's claim of title to the property affected the question of
adverse possession, he was conclusively presumed to know that the
railroad company owned the land or had an interest in it and that
his vendor did not have title, as the contract, which was signed
by his authority and which he read a few days after it was ex-
ecuted, referred to the land in plain language as lands of the rail-
road company. (Page 119.)

5. ADVERSE POSSESSION—CONTINUITY—RECOGNITION OF TITLE OF
FORMER OWNER. Where before the purchaser under such contract
had adverse possession for seven consecutive years he brought suit
against the railroad company for specific performance of the agree-
ment, on the theory that T. was its agent, thereby recognizing and
admitting its legal title, this broke the continuity of his adverse
possession. (Page 120.)

6. ADVERSE POSSESSION—PRESUMPTION AND BURDEN OF PROOF—PAY-
MENT OF TAXES. Under Comp. Laws 1907, section 2866, providing
that in no case shall adverse possession be considered established
unless it shall be shown that the land has been occupied and claimed
for seven years continuously and that the party or persons, their
predecessors and grantors, have paid all taxes levied and assessed
upon such land according to law, the burden of proof rested on one
claiming by adverse possession to show that taxes were not levied
and assessed if such was the fact or that they were paid if they
were levied and assessed. (Page 121.)

On Application for Rehearing.

7. ADVERSE POSSESSION—PAYMENT OF TAXES—DURATION AND CONTI-
NUITY. Comp. Laws 1907, section 2866, requiring the payment of
taxes levied and assessed for seven years continuously to establish
adverse possession, is mandatory, and the failure to pay the taxes
levied and assessed for one year of the seven defeated the claim
of title. (Page 124.)

Appeal from District Court, First District; *Hon. J. D Call,*
Judge.

Action by Central Pacific Railway Company against David
S. Tarpey, Administrator and others.

Judgment for plaintiff. Defendant Peter J. Peterson
appeals.

AFFIRMED.

*Geo. Halverson* for appellant.

*John V. Lyle, H. G. Nebeker* and *Frank Thunen* for re-
spondent.

THURMAN, J.

Plaintiff by this action seeks to quiet its title to the east half
of section 5, and all of sections 9, 15, 23, and 27, in township
8 north, range 1 east, Salt Lake meridian, United States
survey. The complaint filed by the plaintiff includes all of
the odd sections from ·1 to 29, inclusive, in said township,
but all of the defendants, except Tarpey and Peter J. Peter-
son, filed disclaimers, thus eliminating from the case the parti-
cular land occupied by them. Tarpey failed to appear and
answer, and the only answer filed in the case is by defendant
Peterson who claims ownership of the land first above de-
scribed; hence the lands claimed by him are the only
lands involved in the action. The complaint, in effect, alleges
ownership of the land by the plaintiff in fee simple, adverse
claim and possession by the defendants, and that said claim

and possession is without right. Defendant Peterson answers and, in effect, admits, his claim of interest in and possession of the land, but denies the remaining allegations of the complaint. As a further defense, defendant, in effect, alleges that in 1887 he entered into a contract in writing to purchase the land in controversy from one D. P. Tarpey for a certain consideration; that Tarpey immediately put defendant in possession of the land and that defendant has ever since held the same adversely to the plaintiff and all the world, openly, notoriously, uninterruptedly, and peaceably under color of title and claim of right thereto, to the exclusion of the plaintiff and all the world, and has ever since paid all the taxes legally levied and assessed on said land, and has used said land according to the usual course and custom of the country. Defendant also alleges full performance of the contract with Tarpey by final payment for the land December 24, 1896. Both plaintiff and defendant pray for equitable relief.

Plaintiff, replying to defendant's further defense, for want of knowledge or information sufficient to form a belief, denies, in effect, all of the allegations thereof, except that said Tarpey did execute said agreement. Plaintiff affirmatively alleges that defendant, at all times, expressly admitted the title of plaintiff and its predecessor in interest to said land. By way of explaining Tarpey's connection with said land plaintiff then alleges, in effect, that in 1887 plaintiff's predecessor in interest, the Central Pacific Railroad Company, agreed to sell, and, when fully paid for, to convey, to said Tarpey said land, but that no payment was ever made thereon, and in 1895 the contract with Tarpey was rescinded and canceled by mutual consent of the parties, and thereafter, by instrument in writing, Tarpey assigned and transferred back to the railway company all his rights under said contract.

In this statement, for the sake of brevity and simplicity, we have paraphrased the substance of the contract between Tarpey and the defendants so as to include only so much as relates to the defendant Peterson and the land claimed by him. All the rest is immaterial under the issues tried in the court below. The case was tried by the court without a jury. The evidence,

without dispute, tends to show that the plaintiff is the owner of the legal title to the land in controversy by grant under an Act of Congress enacted prior to 1887, and also by patent issued by the United States in 1894. The evidence also tends to show that defendant first entered into possession of the land under an executory contract for purchase with said Tarpey in 1887, as alleged in the answer, and that ever since that time defendant has used the same and all of it for grazing purposes, either by himself or by persons claiming under him, the use thereof being open, notorious, and peaceable under claim of right. It does not appear that the land was ever inclosed by a fence, or other inclosure, or cultivated or improved, or money expended upon it for purposes of irrigation. The evidence also shows without dispute that defendant fully performed his part of the contract with Tarpey by payment of the purchase price within the time limited by the contract, which was December 24, 1896. It does not show, however, that the plaintiff or its predecessors in interest received any part of the purchase price so paid, but, on the contrary, such payment is affirmatively denied. The court found that the contract was entered into with Tarpey as alleged in the defendant's answer, and that defendant had fully paid for the land according to its terms. It also found that defendant, upon the execution of the contract in 1887, was immediately put into possession of the land by Tarpey, and had ever since continued in the exclusive possession thereof, openly, notoriously, exclusively, and peaceably, under claim of right so to do, against all the world except Tarpey and the plaintiff up to the time of full payment of the purchase price, and after that time against all the world.

Other findings were made by the court which, at this point, are not material. As conclusions of law the court found the contract with Tarpey was and is not color of title, and that the possession of the land by the defendant was not adverse until the date of final payment, December 24, 1896. It also found that defendant had acknowledged title in the plaintiff by bringing suit against it in respect to the land, and, further, that defendant had failed to pay the taxes legally levied and

assessed against the property continuously for seven years during said time. It further found that plaintiff was entitled to a decree as prayed for in its complaint. Judgment was rendered accordingly and defendant appeals.

Appellant assigns as error the above findings and conclusions of the trial court, and also makes other assignments which, in our view of the case, are not necessary to determine. The vital and only question to be determined is, Was the defendant's occupancy and possession of the land during any period of seven years adverse to the plaintiff within the meaning and purview of the statutes of Utah relating to title by adverse possession? The law defining the conditions under which title by adverse possession may be acquired is found in Comp. Laws Utah 1907, sections 2862 to 2866, inclusive. As all of these sections are necessary to an intelligent understanding of the question before the court they are here presented in full:

"2862. Whenever it shall appear that the occupant, or those under whom he claims, entered into possession of the property under claim of title exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property under such claim, for seven years, the property so included shall be deemed to have been held adversely, except that when the property so included consists of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract.

"2863. For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument or a judgment or decree, land shall be deemed to have been possessed and occupied in the following cases: (1) Where it has been usually cultivated or improved; (2) where it has been protected by a substantial inclosure; (3) where, although not inclosed, it has been used for the supply of fuel or of fencing timber for the purpose of husbandry, or for pasturage, or

for the ordinary use of the occupant; (4) where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared or not inclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated.

"2864.   Where it appears that there has been an actual continued occupation of land under claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied, and no other, shall be deemed to have been held adversely.

"2865.   For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only: (1) Where it has been protected by a substantial inclosure; (2) where it has been usually cultivated or improved; (3) where labor or money has been expended upon dams, canals, embankments, aqueducts, or otherwise, for the purpose of irrigating said lands, amounting to the sum of $5 per acre.

"2866.   In no case shall adverse possession be considered established under the provisions of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, and that the party or persons, their predecessors, and grantors have paid all taxes which have been levied and assessed upon such land according to law."

The presumption in case of a claim of adverse possession is in favor of the person holding the legal title, and the burden is therefore upon the claimant to show that whatever possession he has is not under and in subordination to the legal title. Section 2861, Comp. Laws Utah 1907.

By reference to the sections of the statute which we have set out in full it will appear that there are only two kinds of adverse possession of real estate under the laws of Utah: (1) Where the occupant founds his claim of title upon a written instrument as a conveyance of the property in question, etc., in which case he may claim all the property described in the

instrument, as provided in section 2862. In such case the character of his possession and occupancy is determined by the provisions of section 2863. (2) Where he claims title exclusive of other right, not founded upon a written instrument, etc., in which case he can only claim to the extent of his actual occupation, as provided in section 2864. In such case the character of his possession is determined by the provisions of section 2865.

Appellant in this case, in order to succeed against the legal title of respondent, must establish his title by a preponderance of the evidence under one or the other of these provisions of the statute.

It suits our convenience to first determine whether or not appellant established a title to the land by actual occupancy of the entire tract adversely to the plaintiff, under the provisions of sections 2864 to 2866, inclusive. Under these sections, it will be observed, he need not rely upon a written instrument. His claim of title is based upon actual possession and occupancy of the land under claim of title exclusive of any other right. But under these sections the land must have been protected by a substantial inclosure or have been usually cultivated or improved, or money expended upon it for irrigation, as provided in section 2865. By reference to section 2863, where the claim is founded upon a written instrument as a conveyance, protection by a substantial inclosure is not required where the land has been used for pasturage or other purposes mentioned. That is for the reason that, in that case, the extent of the possession and occupancy is determined by the written instrument upon which the claim of title is founded. But where the claim of title is not founded upon a written instrument, but is based entirely upon actual possession of every part of the land, the requirement that the land be protected by a substantial inclosure, or that it has been usually cultivated or improved, or money expended upon it for irrigation, as provided in that section, is imperatively necessary. 2 C. J. pp. 60 to 64, inclusive, also Id. pp. 67, 68. There being no cultivation, or improvement, or money expended for irrigation, or any protection by a substantial inclosure upon the

land in question, appellant cannot succeed under this provision of the statute even though his occupancy may have been open, notorious, peaceable, and under claim of right. The law fixes these conditions, one of which, at least, must exist and be proven in order to establish title by adverse possession under this provision of the statute. We do not understand that appellant seriously contends that he has established title to the land under sections 2864 and 2865. If he does, the contention seems to rest solely upon that portion of the court's finding in which it stated that defendant's possession had been open, notorious, under claim of right. But this, as we have seen, is not sufficient. Appellant's claim under these sections cannot prevail.

Can appellant succeed under the provisions of sections 2862 and 2863, supra? This seems to be the real ground of appellant's contention. He insists that by virtue of his written agreement with Tarpey, in which Tarpey agreed to convey the land to him upon his payment of the purchase price, and his continuous possession of the land thereafter, openly, notoriously, peaceably, and under claim of title founded upon this written agreement, and payment of taxes, he is entitled to a decree in his favor. This brings us to a consideration of the written instrument itself, for, by its terms, we must determine its character—whether or not it be a conveyance of the property in question as that term is used in section 2862.

The court found, and there is no complaint made of this finding, that on the 10th day of September, 1887, the defendant Peter J. Peterson (and others, naming them) entered into a contract with D. P. Tarpey for the purchase of all lands of the Central Pacific Railroad Company, to which it was or should thereafter become entitled, in certain sections, naming them (including the lands in controversy) for the sum of $9,600; $960 down, and the balance in nine equal annual payments with interest thereon annually in advance at seven per cent. per annum, payable on the 24th day of December of each year until paid, by which said contract the said Tarpey agreed, upon such payment being made and upon the issuance of patent therefor from the United States,

to cause a deed in fee simple for the conveyance of said premises to be executed and delivered to the said Peter J. Peterson (and others, naming them) and, in the meantime, said parties should have immediate possession and enjoyment of said premises.

It is also found by the court that said contract was duly performed by said parties by payment in full according to the terms of the contract, as witnessed by Tarpey's receipt for final payment, of date December 24, 1896.

This is the substance of the written instrument relied on by appellant as color of title which, together with his possession for more than seven years, constitutes his muniments of title to the land.   Perhaps the most serious question for appellant is, is the instrument in question, upon which appellant founds his claim, a conveyance of the property, or can it be treated as a conveyance of the property for the purpose of claiming the property adversely as against the respondent within the meaning of section 2862, Comp. Laws Utah, upon which he bases his claim?

Manifestly, on its face, the contract between Tarpey and appellant relied on as color of title is not and does not purport to be a conveyance of the property.   Tarpey did not have the legal title to the land when he contracted with appellant and others for the sale of it.   The contract itself refers to the land as land of the Central Pacific Railroad Company to which it was or should thereafter become entitled, naming the sections. The contract also only promises conveyance of the land to appellant when patent is issued by the United States.   At most the contract was only a promise to convey when its conditions were performed and when patent issued by the United States. Such an instrument it has been held by this court does not even create an equitable title to the property until the purchaser has performed all the conditions to be performed by him.   *Smith* v. *Jones*, 21 Utah, 270, 60 Pac. 1104.

''An instrument, in order to operate as color of title, must purport to convey title to the claimant thereunder, or to those with whom he is in privity, and must describe and purport to convey the land in controversy.'' 2 C. J. p. 174.

Appeal from First District.

"Color of title for the purpose of adverse possession under the statutes of limitation as to land is that which has the semblance or appearance of title, legal or equitable, but which is in fact no title." 1 Cyc. 1082.

"Color of title is 'that which in appearance is title, but which in realty is not title'; that which seems and professes to convey the property described, but for some reason does not do so." *Powers* v. *Kitching,* note 88 Am. St. Rep. 702.

"Whenever an instrument by apt words of conveyance from grantor to grantee in form transfers what purports to be the title, it gives color of title." *Powers* v. *Kitching,* note 88 Am. St. Rep. 708.

See, also, to the same effect, *Hall* v. *Law,* 102 U. S. 461, 26 L. Ed. 217; *Rigor* v. *Frye,* 62 Ill. 507; *Osterman* v. *Baldwin,* 6 Wall. 116, 124, 18 L. Ed. 730; Am. & Eng. Ency. of Law, vol. 1, at pages 857 and 859. See, also, *Converse* v. *Calumet River Co.,* 195 Ill. 204, 62 N. E. 887, and cases cited.

The opinion of this court, in *Smith* v. *Jones,* supra, that a mere promise to convey on performance of conditions does not convey title, either legal or equitable, when considered in connection with the authorities defining color of title, shows quite conclusively that the instrument relied on by appellant is insufficient to constitute color of title upon which to found a claim to property by adverse possession. The authorities cited seem to be in harmony with the great weight of authority on that question.

Appellant, however, cites and relies on the opinion of this court in the case of *Welner* v. *Stearns,* 40 Utah, 185, 120 Pac. 490, Ann. Cas. 1914C, 1175. Plaintiff, under a parol agreement with Salt Lake County, was put in possession of certain lots in 1899 in consideration of his payment of the taxes and costs which had accrued against the lots. He immediately inclosed the lots with a fence. In May, 1900, the county gave him a deed. He then commenced suit to quiet title by publication of summons. A decree was entered in his favor in 1906. In 1907, after the decree was entered, a party claiming under the legal title procured an order setting aside the decree and then set up his title and prayed that it be quieted as against the plaintiff. The plaintiff claimed title by adverse possession and failed in the trial court. He appealed to this court and

it sustained his contention. The court first determined that the plaintiff having inclosed the lots with a fence in 1899 and entered into actual possession under an agreement with the county, and having paid the taxes and costs, his possession for seven years continuously being a pedis possessio was sufficient to give him title by adverse possession. But it was contended by respondent in that case that appellant, from the time of his deed, which was delivered in 1900, had not had possession for seven years before respondent filed his counterclaim in the action, and therefore his claim of adverse possession was invalid. To this contention this court replied, in effect, that, having entered into possession in 1899, and having received his deed in pursuance of the agreement in 1900, his right to claim adversely related back to the time possession was actually taken. This proposition is supported by the case cited by the court in that opinion. *Howland* v. *Newark Cemetery Ass'n,* 66 Barb. (N. Y.) 367. In further support we also cite 2 C. J. 87, and *Schauble* v. *Shulz,* 137 Fed. 389, 69 C. C. A. 581, cited by appellant. In the case at bar appellant never received a deed. The case, therefore, does not come within the rule laid down by this court in the case cited, and in the authorities to which we have referred.

The fact that appellant may have performed all the conditions of the contract to be by him performed strictly according to its terms does not, without an actual conveyance in pursuance of the terms of the contract, entitle him to claim adversely from the time he entered into possession. In such case his right to claim adversely begins only when he has performed all the conditions of the contract and becomes entitled to a conveyance of the property. 1 Cyc. 1098.

It will be remembered that Tarpey was a vendee of the plaintiff under a contract to convey the land in question at the time he entered into the contract with the defendant in 1887. His contract with plaintiff was similar in form to his contract with the defendant. Tarpey never paid the purchase price of the land to the plaintiff, notwithstanding he received final payment from the defendant December 24, 1896. Under these conditions defendant's right to claim adversely, not only

against Tarpey, but against the plaintiff as well, would not begin until December 24, 1896, when he made final payment. *Potts* v. *Coleman*, 67 Ala. 221, and cases cited in the opinion at page 225; 1 Cyc. 1094; *Hannibal & St. J. R. Co.* v. *Miller*, 115 Mo. 158, 21 S. W. 915; *Jackson* v. *Bard*, 4 Johns. [N. Y.] 230, 4 Am. Dec. 267; *Pratt* v. *Canfield*, 67 Mo. 50; *Anderson* v. *McCormick*, 18 Or. 301, 22 Pac. 1062; *Lewis* v. *Hawkins*, 23 Wall. 119, 23 L. Ed. 113; *Champion* v. *Brown*, 6 Johns. Ch. (N. Y.) 402, 10 Am. Dec. 343; *Pearson* v. *Boyd*, 62 Tex. 541.

Appellant, in support of his contention, cites many cases, most, if not all, of which are clearly distinguishable from the present case. Many of them are in accord with the authorities we have cited on one proposition or another. In connection with this contention, however, appellant contends that he never knew of the existence of any claim of interest in the land on the part of the plaintiff until shortly before the 11th day of December, 1900. It is assumed that ignorance on the part of appellant of plaintiff's claim of title to the property is a circumstance to be considered in determining whether or not he can claim adversely to the plaintiff. Without taking the trouble to determine what might be the effect of appellant's ignorance on that point, we are disposed to hold that that is a matter as to which, under the circumstances of this case, appellant cannot plead ignorance. He came into this case founding his right upon a written instrument. If he recovers he expects to recover by virtue of that instrument. He was and is a party to it. While he did not subscribe his name to it himself it was done by his authority. He read it within a day or two after it was executed and had it in his possession afterwards. That instrument, in plain language, refers to the land in controversy as lands of the railroad company to which it was then entitled or might thereafter become entitled. It also occurs in the instrument that upon payment of the purchase price a deed will be issued as soon as patent could be obtained from the United States. In view of these facts, while his plea of ignorance in fact may be true, it should not be permitted to have controlling influence in determining the rights of the parties before the court. For

the purpose of this case the presumption is conclusive that he knew the railroad company owned the land or had an interest in it, and that Tarpey did not have the title. If for no other reason, in the interest of sound morality in judicial proceedings we are disposed to hold the presumption conclusive. If, then, appellant is conclusively bound to know at the time he entered into the contract with Tarpey, and from the contract itself, that the railroad company owned the land in question, was not the execution of the contract a recognition of the company's title? And even assuming that the written contract constituted color of title, would not appellant in that case be required, in some positive form, to repudiate the railroad company's title before the statute relating to adverse possession would begin to run? 2 C. J. 101 to 103, inclusive; 1 Cyc. 1032 to 1034, inclusive.

In view of the facts and circumstances as we find them in this record we are unable to reach any other conclusion than that appellant's adverse possession of the property in dispute did not begin until December 24, 1896, and from and after that date only could he acquire a title adverse to the respondent.

Assuming, as we do under the authorities cited, that after full compliance with the terms of the executory agreement exclusive possession by appellant under claim of right would be adverse to respondent, we now proceed to consider the character of appellant's possession from December 24, 1896, when final payment was made, down to the commencement of this action in 1911. Giving appellant the benefit of a positive admission that during the whole of that period, so far as external appearances were concerned, his possession was open, notorious, exclusive, and under claim of right, still the important question is was it at all times, or for any consecutive period of seven years, adverse to the respondent in contemplation of law? It appears that on December 11, 1900, appellant, and others associated with him in said written agreement with Tarpey, assuming that Tarpey was the agent in said agreement of the railroad company, predecessor of plaintiff, instituted a suit against said company for a specific performance of said written agreement by which he recognized

and admitted the legal title of the company to the land in question. It will be noted that this was less than seven years from the time appellant's adverse possession could possibly begin, to wit, December 24, 1896.

"The possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other until such occupant has changed the character of his possession, either by express declaration or by the exercise of actual ownership inconsistent with a subordinate character." 1 Cyc. 1033, 1034; 2 C. J. 103; 1 R. C. L. 722, section 37, title Adverse Possession.

These authorities, and the cases cited in the notes, generally support the doctrine that a recognition of title in another at any time before the statute completely runs in whatever form the recognition may appear, breaks the continuity of adverse possession and thereafter it will require some unequivocal act or declaration to start the statute running in favor of the adverse claimant. We find no dissent from this doctrine among the authorities we have examined upon this question. It is evident, therefore, that whatever right by adverse possession appellant has as against respondent is based upon the character of his possession after the filing of the action against respondent's predecessor, December 11, 1900.

The record shows that appellant paid the taxes on all the land in 1901. In 1904 he paid on section 27 only. Respondent paid them all in 1905. In 1906 appellant paid on sections 15, 23, and 27. In 1907 proof is not clear. In 1909, 1910, and 1911 appellant paid on a large part but not on all the sections. In 1902, 1903, and 1908 there is no proof as to payment. This is a manifest failure to comply with the provisions of Comp. Laws 1907, section 2866, which applies to every character of adverse possession. That section, which is set out in full with the other sections relating to adverse possession on a previous page of this opinion, is mandatory in its terms and provides, in effect, that in no case shall adverse possession be considered established under the provisions of any section of the Code, unless it shall be shown, among other things, "that the party or persons, their predecessors and grantors, have paid all taxes which have been

levied and assessed upon such land according to law.'' The section is not only mandatory in terms, but it clearly imposes the burden of proof upon the adverse claimant.

Appellant does not claim that he paid the taxes on all the land levied and assessed after 1900, or that he paid a part in each and every year, but rests his claim upon the proposition that his adverse possession was perfected prior to 1896, during which time no taxes were levied or assessed. This court has heretofore held that, where no taxes are levied, or assessed, adverse possession may be acquired without payment. *Utah Copper Co.* v. *Chandler,* 45 Utah, 85, 142 Pac. 1119. But, as we have already shown, plaintiff's adverse possession could not begin in any event until December, 1896. Consequently, whether taxes were levied and assessed or paid prior to that date becomes wholly immaterial. But after that date, and especially after 1900, when appellant recognized respondent's title by bringing suit for specific performance of the Tarpey contract, payment of all the taxes on the land by appellant each and every year, if they were levied and assessed, became vitally material to the perfection of his title. If they were not levied and assessed the burden was on him to show that fact. If they were levied and assessed the burden was on him to show that he paid them. There is no other conclusion possible under the statute as construed by the authorities. From the foregoing it conclusively appears appellant did not pay the taxes on the land although they were levied and assessed for seven consecutive years after his claim of adverse possession began to run, hence he did not acquire title to the land as against the respondent, the holder of the legal title. 2 C. J. 203; 1 R. C. L. p. 700, section 10, ''Adverse Possession''; 1 Cyc. 1106.

The writer of this opinion keenly senses the effect the conclusion reached will have upon the appellant. He paid for the land strictly according to his contract with Tarpey, and no doubt is conscientious in the belief that he is entitled to the land and to have his title thereto quieted and affirmed. His misfortune is a hardship beyond the power of this court to redress. Having based his claim upon adverse possession he can only succeed by showing a substantial compliance with

every provision of the statute relating to that character of title. In the opinion of the court he has not done so.

It is therefore ordered that the judgment be affirmed. Respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.

## ON APPLICATION FOR REHEARING

THURMAN, J.

Appellant, on application for rehearing of this case, complains that the court, in finding that Tarpey was a vendee of the railroad company under a contract for the purchase of the land in controversy, assumed a state of facts not supported by the evidence. Appellant's counsel during the trial of the case in the lower court, while appellant was on the stand as a witness in his own behalf, introduced in evidence an answer filed by the railroad company in a former suit between the same parties in which answer it clearly appears that the relation of vendor and vendee did exist between the railroad company and Tarpey, as stated in our former opinion, and just why the assertion is now made that there was no evidence to that effect is more than we can understand.

Appellant also reiterates the doctrine laid down by Cyc. that executory agreements in writing for the sale of land become color of title after payment of the purchase price. We accepted that doctrine without qualification and made it the fundamental basis of our opinion. We fail to see the reason for again bringing it to the attention of the court. Commencing with the contract as color of title at the time the last payment was made to Tarpey in December, 1896, we find appellant's possession had not been adverse for any period of seven years thereafter for the reason that he had not paid all the taxes that had been levied and assessed on the land every year continuously as provided in Comp. Laws Utah 1907, section 2866.

Appellant in his application for rehearing admits that the taxes levied and assessed for at least one year of the seven were not paid by him. As the statute referred to is mandatory and must be strictly complied with, this admission alone defeats appellant's title by adverse possession.

The law cited by appellant relating to usurious liens (39 Cyc. 1067) has no application to this case. As stated in our former opinion, we are powerless to remedy any hardship or misfortune that may result from the conclusion we have reached. We can neither make the law nor distort it. We can only declare it as we find it. We find no reason to change or modify our opinion. The application for a rehearing is therefore denied.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.