## KELLER v. CHOURNOS et al.

No. 6429. Decided January 28, 1943. (133 P. 2d 318.)

**536**

See 26 R. C. L., 420; 31 C. J. S., Evidence, sec. 32.

*Walter G. Mann*, of Brigham City, for appellant.

*Thatcher & Young*, of Ogden, for respondent.

MOFFAT, Justice.

This is an appeal from a judgment quieting title to certain grazing lands, to be described, in the defendant Nick Chournos and his wife. The defendant First National Bank of Malad, Idaho, a mortgagee of Chournos, defaulted. Appellant Keller claims legal title to the property and commenced this action by the short form of complaint to quiet title. Defendants Chournos answered, setting up a general denial and, by counterclaim, alleged title in themselves by

virtue of a quitclaim deed from Box Elder County. Plaintiff Keller replied, alleging that tax proceedings through which Chournos purported to take title from the County were null and void and of no effect and offered to reimburse defendants for all taxes and interest paid. The cause was tried to the court. Findings and judgment were entered in favor of the defendants Chournos, and plaintiff appeals.

The correct description of the grazing land is pleaded as follows:

The East half of the Southeast Quarter and the Southwest Quarter of the Southeast Quarter of Sec. 12, containing 120 acres; and

The Northeast Quarter of the Northwest Quarter and the Northeast Quarter of Sec. 13, containing 200 acres, in Township 6 North Range 6 West, Salt Lake Base and Meridian, in Box Elder County, Utah.

The history of the land, as it is involved in this action, is as follows:

July 1, 1919: Patent from United States to Adrian L. Farr;

March 23, 1920: Mortgage executed by Farr and wife to A. F. Savage;

1920: Assessment of general taxes for 1920;

December, 1920: List published of Delinquent Taxes for 1920;

December 21, 1920: Tax Sale Certificates issued by County Treasurer to Box Elder County;

September 22, 1924: Savage commenced foreclosure proceedings under his mortgage from Farr and wife;

May, 1925: Annual tax sale published;

May 1, 1925: Auditor's Tax Deeds issued to Box Elder County, (recorded May 25, 1925);

January 29, 1926: Certificate of Sale by Sheriff to A. F. Savage under mortgage foreclosure;

September 6, 1927: Sheriff's Deed to Savage (not recorded until Oct. 5, 1940);

November 3, 1936: Quitclaim Deed from Box Elder County to Nick Chournos for $92.00 (taxes paid for 1937, 1938 and 1939 by Chournos);

June 18, 1940: Deed executed from A. F. Savage to plaintiff Keller;

October 5, 1940: Sheriff's Deed to Savage and deed from Savage to Keller recorded in County Recorder's Office (General taxes for 1940 paid by plaintiff Keller);

October 25, 1940: This action instituted by plaintiff Keller to quiet title.

It is thus shown that plaintiff Lloyd W. Keller claims legal title from the original patentee, through the latter's mortgage on foreclosure, and while the defendant testified that Farr or Savage had never been on the land, he admitted that he did not know either of them. Our statute, then Sec. 6451, Comp. L. Utah 1917 (now 104-2-7, R. S. U. 1933), provides:

"In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property *shall be presumed to have been possessed thereof within the time required by law;* and the occupation of the property by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that the property has been held and possessed adversely to such legal title for *seven years* before the commencement of the action." (Italics added.)

It will also be observed that Chournos claims title by virtue of the quitclaim deed issued to him by Box Elder County on November 3, 1936, for which he paid $92, and under which he took actual possession of the property and paid the general taxes thereon for the years 1937, 1938 and 1939. The general taxes for 1940 were paid by plaintiff Keller.

Respondents Chournos contend that plaintiff's action is barred by the provisions of our seven-year adverse possession statutes (104-2-5, 6 and 7, R. S. U. 1933), and the trial court found that Chournos and L. L. Keller, father of plaintiff, both of whom owned grazing lands adjoining subject property, went into actual possession of the premises more than ten years prior to the commencement of this action and used the same for grazing purposes. The record shows that if they did so graze upon and use the land prior to November 3, 1936, they were mere trespassers and not claimants of the land within the meaning of 104-2-12, R. S. U. 1933, which provides:

"In no case shall adverse possession be considered established under the provisions of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, and that the party, his predecessors and grantors have paid all taxes which have been levied and assessed upon such land according to law." (Sec. 6456, Comp. L. U. 1917.)

Appellant assigns the following errors: (1) That the court erred in finding that the tax proceedings were in conformance with the statutes made and provided, and that title passed thereby; (2) that the court erred in finding that said action is barred under the provisions of Secs. 104-2-5, 6 and 7, R. S. U. 1933; and (3) that the court erred in refusing to grant appellant's motion for a new trial.

The first step to be examined to trace defendants' claim of title is the assessment roll of general taxes for the year 1920. A deputy county treasurer of Box Elder County, reading from the record, testified that it shows an assessment for 1920 to Adrian L. Farr of Ogden; that the notation, "Promontory, town or city survey," appears at the top of the page, but that the spaces for the township and range were not filled in. He then read the description of the property as it appears in the record, as follows:

"East half, south west quarter, south west quarter, south east quarter, lot or section twelve, block or township, six, plat or range six, number of acres, 120. Value 450, total number of acres, 120, total value 450. Taxes 8.64. A. Subsequent sale of 8.64" (tax sale of $8.64 with notation in the "remarks" column, "sold to county").

Further, that the name of Adrian L. Farr and Ogden were dittoed and followed by:

"North east quarter, north west quarter, north east quarter, lot or section 13, block or township 6, plat or range 6, number of acres, 200, value 750, total number of acres, 200, total value of acreage 750, total value of property assessed 750, tax, 14.40. Receipt number, in pencil, 1464. Referring to capital 'A,' tax sale, 14.40, with the notation, sold to county."

He further testified that nothing on the page showed whether the township was north or south or the range east or west, but that Salt Lake Meridian was shown.

A copy of the tri-weekly Box Elder Journal, plaintiff's Exhibit "C," issued December 15, 1920, contains the following:

"Delinquent Tax List of Box Elder County, State of Utah, for the year 1920. The State and State School * * * Tax for the following property holders for Box Elder County, was delinquent on the 29th day of November, 1920, and is hereby advertised in accordance with Section 6016 of the Session Laws of Utah, 1919. If settlement is not made together with penalty as in said section provided, before December 22, the same will be sold at the front door of the Court House. John J. Ward, County Treasurer."

In this list, under the heading, "Promontory," appear the following descriptions:

"Ardain L. Farr e 1-2 sw 1-4 sw 1-4 se 1-4 sec 12 tp 6 rge 6 120 acres ...... 8.64" and "Adrain L. Farr ne 1-4 nw 1-4 ne 1-4 sec 13 tp 6 rge 6 200 acres ...... 14.40."

Tax Sale Certificates were issued December 21, 1920, to Box Elder County, plaintiff's Exhibits "A" and "B". These recite, in part,

"That on the Twenty First day of December 1920, after due publication of notice in the manner provided by law, and pursuant to law, I, John J. Ward, as Treasurer of Box Elder County, State of Utah, offered for sale subject to redemption as provided by law, the property situated in the County of Box Elder, State of Utah, hereinafter described, for delinquent State * * * Taxes, for which said property is liable, assessed in the name of Adrian L. Farr, as owner, for the year 1920" etc.

These certificates are signed by "Benj. D. Harding", not for the treasurer or as a deputy treasurer, but as "Treasurer of Box Elder County, Utah." The descriptions in the respective instruments are written as follows:

"E½ SW¼ SW¼ SE¼ of Sec. 12 Township (6) North Range (6) W. S. L. M. Containing (120) Acres," and "NE¼ NW¼ NE¼ of

Sec. (13) Township (6) North Range (6) W. S. L. M. Containing (200) Acres."

Plaintiff's Exhibit "D" is a copy of the semi-weekly Box Elder Journal issued May 19, 1925, which contains the following:

"Annual Tax Sale—Notice is hereby given in accordance with Section 6056, Compiled Laws of Utah 1917, as amended by Section 6056, 1921 Session Laws [c. 140], that Box Elder County, Utah, by and through its Board of County Commissioners, will, on Thursday, May 28th, 1925, at 12 o'clock noon at the front door of the Court House, in Brigham City, Box Elder County, Utah, offer for sale in separate parcels for cash, all of the real estate hereinafter described, together with all other real estate held by Box Elder County under Tax Deed, and at such sale the County Clerk of Box Elder County, Utah, will issue and deliver to the purchaser of the title of the State of Utah, County of Box Elder, City of Brigham, or any town or school or other taxing district interested in the real estate so sold. No bid will be accepted for less than all taxes, costs and interest to date of sales herein referred to. Lewis S. Pond, Albert E. Holmgren, John J. Craner, Board of County Commissioners of Box Elder County, Utah. (Attest) P. Russell Wight, County Clerk."

In this published list appear the following descriptions:
"Adrain L. Farr, E½ SW¼ SW¼ SE¼ of Sec 12, Township 6 North, Range 6 W. S. L. M., Containing 120 acres," and "Adrain L. Farr, NE¼ NW¼ NE¼ of Sec. 13, Township 6 North, Range 6 W. S. L. M., Containing 200 acres."

Plaintiff's Exhibits "E" and "F" are Auditor's Tax Deeds, executed May 1, 1925, purporting to convey the property to Box Elder County. These instruments recite, in part:

"This Deed, made the 1st day of May, A. D. 1925, between Box Elder County, State of Utah, by P. Russell Wight as County Clerk and ex-Officio Auditor of Box Elder County, State of Utah, party of the first part, and Box Elder County, the party of the second part, Witnesseth: That Whereas, as shown by certificate of sale, made by John J. Ward as County Treasurer of Box Elder County, aforesaid, dated December 21st, 1920, this day presented to the party of the first part, and hereinafter referred to, that in the year 1920 the property hereinafter described having been duly assessed, according to law, there were duly levied for said year, State, * * * Taxes

* * * in the aggregate amount of $8.64 against Adrian L. Farr" etc.

Appellant contends that these instruments are null and void on their face, as showing a conveyance from the County to the County. It will be observed, however, that the conveying language in each instrument is:

"Now, therefore, the said party of the first part, as County Clerk and ex-Officio Auditor of Box Elder County, * * * hereby conveys to the said party of the second part" (Box Elder County), etc.

The deeds are signed and acknowledged by "P. Russell Wight as County Clerk and ex-Officio Auditor of Box Elder County, State of Utah", and, unnecessarily, over the signature on the forms, appears "Box Elder County, State of Utah". The deeds show attempted conveyances by the Auditor of the County to the County, and not by the County to the County as contended for by appellant.

The descriptions in these instruments are shown, respectively, as follows, in typewriting:

"E½ SW¼; [the semi-colon inserted by pen and ink] SW¼ SE¼ of Sec. 12 Township (6) North Range (6) W. S. L. M. Containing (120) Acres" and "NE¼ NW¼; [the semi-colon inserted by pen and ink] NE¼ of Sec. (13) Township (6) North Range (6) W. S. L. M. Containing (200) Acres."

The descriptions of the property from the beginning of these tax proceedings are attacked by appellant as incomplete and insufficient. It may be said, in so far as the facts in this case are concerned, that the failure to state that the township was "north" and the range "west", where those omissions are shown, was not fatal, inasmuch as the property is clearly shown throughout to be located at Promontory, in Box Elder County, Utah, directed from Salt Lake Meridian, and that these designations must of necessity be "north" and "west", respectively, and the court would be authorized to and justified in taking judicial notice of such facts, provided the descriptions were otherwise acceptable; but this language is not meant to be con-

strued as judicial sanction of the omission of any material part of a legal description in such proceedings. We urgently admonish State, County, City and other officers and employes, charged with such duties, to use care and precision in the various steps which are required by law to be taken in these tax sale proceedings, from the original assessments to their conclusion. Altogether too many cases arise in which needless irregularities and omissions result in vitiating title proceedings and muniments of title, and causing unnecessary and burdensome expense to the taxing bodies and to persons interested in the property involved.

It has been repeatedly held that the description of property in tax sale proceedings, strictly creatures of statute as they are, must be definite and certain. As ▪ stated in the case of *Tintic Undine Ming. Co.* v. *Ercanbrack et al.*, 93 Utah 561, 74 P. 2d 1184, at page 1188:

> "As to the errors in description of the property, they are even more serious and more evident. When real property is assessed or sold for taxes, the description must be such that the property can be definitely known and located. The tax becomes a lien on the property, and the description must be definite enough for the lien to attach to the property without extraneous evidence. If there is no lien, there can be no sale. It must be definite enough so the owner will know just what property is being sold, and a prospective purchaser will know what particular property he could buy, so as to determine its value."

And, while our statutes provide that, ▪

> "In the assessment of land or the advertisement and sale thereof for taxes, initial letters, abbreviations and figures may be used to designate the township, range, section, or parts of sections" (Sec. 6086, Comp. L. U. 1917, now 80-11-6, R. S. U. 1933),

and that,

> "No assessment or act relating to assessment or collection of taxes is illegal on account of informality or because the same was not completed within the time required by law" (Sec. 6087, Comp. L. U. 1917, now 80-11-7, R. S. U. 1933),

there is no provision in our law which authorizes anyone to supply and insert material words and marks of punctuation to correct or alter an otherwise insufficient and fatally defective description.

In *State Finance Co.* v. *Mulberger,* 16 N. D. 214, 112 N. W. 986, 987, 125 Am. St. Rep. 650, the court held a section description similar to those in the instant case to vitiate the assessment and all subsequent proceedings, stating, and quoting the description there considered, as follows:

"The assessment for the year 1897 is attacked on the ground that there was no description of the land in the assessment roll. A tax deed was issued in 1901 under this assessment. The land was described in the assessment roll and in the deed as the 'E.½ S.W.¼ N.E.¼,' section 7, township 139, range 63, containing 120 acres. This description was only at best a description of 20 acres, and it cannot possibly be said to describe 120 acres without adding to the description, which is not permissible. The mere fact that it is said to contain 120 acres does not help out the description. If by any means the description in the assessment roll could be read to mean 120 acres, then it might be that the numbers, read in connection with the description, might make the description definite and certain. This defective description vitiated the assessment and all subsequent proceedings. There was no valid tax and no judgment can be rendered against the plaintiff for the same."

See, also, *State Finance Co.* v. *Beck,* 15 N. D. 374, 109 N. W. 357; *State Finance Co.* v. *Trimble,* 16 N. D. 199, 112 N. W. 984; *Burton* v. *Hoover,* 93 Utah 498, 74 P. 2d 652; *Ferguson* v. *Mathis,* 96 Utah 442, 85 P. 2d 827.

Savage's deed from the Sheriff was not recorded until plaintiff Keller also recorded his deed from Savage on October 5, 1940, and it is not shown that Savage's constructive possession was interrupted until defendants Chournos took actual possession of the land in 1936. Similarly, eleven years elapsed from the date of the Auditor's tax deeds to Box Elder County to the date of the County's quitclaim deed to Chournos. Unlike some jurisdictions, we have no statute which operates to cleanse a tax deed of irregularities if it is not attacked within a stated limitation period.

There are no equities on appellant's side of this case. It tends to offend one's sense of justice. Yet, the cases have not gone to the point where the rules of construction of contracts, deeds, mortgages, or even statutes, may be used in aid of construing tax sale descriptions. We are therefore forced to adhere to the cases so far decided on the strict rule and say the trial court was in error. We therefore hold the assessment and all subsequent tax proceedings in this case void for want of sufficient description, which means that defendants Chournos took no title or interest in the land whatever under the quitclaim deed from Box Elder County in 1936. In view of this decision, it is unnecessary to consider in detail the other points urged by appellant as defects in the tax proceedings.

This brings us to appellant's second assignment relating to the finding and judgment of the trial court that defendants Chournos had been in adverse possession of the land for more than ten years, and therefore plaintiff's action is barred by the provisions of 104-2-5, 6 and 7, R. S. U. 1933 (Secs. 6449, 6450 and 6451, Comp. L. U. 1917).

The most that defendants Chournos could claim, under the record in this case, would be possession of the land adverse to the legal owner and payment of the taxes thereon for a period of about four years, from November 3, 1936, when they took possession under the County's deed, until plaintiff paid the general taxes for 1940 and instituted this action October 25, 1940. The findings and judgment of the lower court in this respect are unsupported by the evidence. *Funk* v. *Anderson et al.*, 22 Utah 238, 61 P. 1006; *Gibson* v. *McGurrin*, 37 Utah 158, 106 P. 669; *Ives* v. *Grange*, 42 Utah 608, 134 P. 619; *Pacific Land & Water Co.* v. *Hartsough*, 50 Utah 581, 168 P. 552; *Central Pac. Ry. Co.* v. *Tarpey et al.*, 51 Utah 107, 168 P. 554, 1 A. L. R. 1319; *Aggelos* v. *Zella Min. Co. et al.*, 99 Utah 417, 107 P. 2d 170, 132 A. L. R. 213.

Appellant's third assignment of error relates to the court's refusal to grant a new trial. Counsel's affidavit accompany-

ing the motion for a new trial, among other things, sets out facts relating to the proof of publication of notice of the May Sale in 1925, which he urged as newly discovered evidence which could not with reasonable diligence have been discovered and produced at the trial. This evidence had reposed in the files of the County Clerk's office from May, 1925, to the time of the trial of this case. However, our disposition of the case makes it unnecessary to rule upon this point.

The findings and judgment of the lower court are reversed, with directions to make and enter findings and judgment in accordance with the views expressed in this opinion. Costs to appellant.

WOLFE, Chief Justice (concurring).

I concur on the ground that the infirmity in the description of the properties as contained in the delinquent tax list advertised in the Box Elder Journal, and in the Tax Sale Certificates and in the advertisement for the May sale were not matters of informality as meant by 80-11-7, R. S. U. 1933 but were substantial defects which prevented the defendant from obtaining a good tax title. I find it unnecessary to make any commitment as to whether the description in the assessment book would invalidate the assessment.

I do not see that we have in this case any question of equities and therefore deem it unnecessary to express an opinion that "there are no equities on appellant's side in this case" or that "it tends to offend one's sense of justice."

I think the lower court may require the plaintiff to pay to the defendant the amount of purchase price paid to the county together with interest thereon as a condition for entering the decree in accordance with the principles laid down in *Burton* v. *Hoover,* 93 Utah 498, 74 P. 2d 652, and *Bolognese* v. *Anderson,* 87 Utah 455, 49 P. 2d 1034, in the opinion denying rehearing.

LARSON, Justice.

I concur. To be sufficient the descriptions of land assessed for taxes must be definite enough on the assessment roll and the advertisement for sale for delinquency of taxes that the property can be identified therefrom. It must be so definite that the owner will know what land of his is assessed and delinquent, and a prospective purchaser will know what land is offered for sale. This does not mean that absolute accuracy is required. *Tintic Undine Mining Co.* v. *Ercanbrack,* 93 Utah 561, 74 P. 2d 1184. I agree that under the facts in this case, the omission of range and township is not fatal for the reasons stated by Mr. Justice Moffat. But the description here used: "e 1-2 sw 1-4 sw 1-4 se 1-4 Section 12" calls for the interpolation of punctuation marks or of the words of or and betwen groups of fractional parts. It would seem that a reader would use either of in each place or and in each place. He is given no guide as to which it should be, and neither would cover the land actually in dispute. Hence, descriptions were void for uncertainty. However, I think the matter of errors in the tax sale certificate, tax deeds, and proceedings for the May sale, are immaterial here. When land is properly assessed, taxes unpaid, the lands properly sold for nonpayment of tax, all the owner has is a right of redemption, and until he redeems or offers to redeem he is in no position to complain about defects in subsequent proceedings. When he redeems such defects as occur after sale are automatically eliminated. If he does not redeem within time provided by law, his rights are extinguished and he has no interests in the land to assert, or that could be affected by irregularities after the sale. For further discussion of this matter see the writer's opinion in *Telonis* v. *Staley,* Utah, 106 P. 2d 163. A rehearing was granted in that case on other grounds so the opinion is not in the Utah reports.

McDONOUGH, Justice.

I concur on the ground that the tax sale was invalid for the reasons stated in the opinion of Mr. Justice MOFFAT, and that plaintiff's action was not barred by the provisions of 104-2-5, 6, 7, R. S. U. 1933.

PRATT, Justice, on leave of absence.